532 A.2d 813

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Christopher CALDWELL, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1987.

Decided Oct. 16, 1987.

Paul R. Gettleman, Zelienople (court-appointed), for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Christopher Conrad, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

444

**OPINION**

ZAPPALA, Justice.

On January 15, 1985, the bodies of Sara and Boykin Gibson, an elderly couple in their 80's, were discovered in their Pittsburgh home. The Gibsons were found seated in chairs facing together, separated by a distance of approximately seven feet, their arms bound to the chairs with clothesline. Their throats had been slashed, and they had been stabbed. The house was ransacked. The Appellant, Christopher Caldwell, was charged with two counts each of homicide and robbery, and one count of burglary and of conspiracy. After the selection of a jury, the Appellant plead guilty generally to all of the charges. Determination of the degree of the homicides was left to the trial judge, who found the Appellant guilty of first degree murder as to each homicide. A sentence of death was returned by the jury on each of the counts. Consecutive sentences of imprisonment of 10 to 20 years on the burglary and robbery counts and of 5 to 10 years on the conspiracy charge were imposed. This direct appeal was filed, and we now vacate the judgments of the death sentences.

The Commonwealth summarized the following evidence which would have been presented had the Appellant proceeded to trial before the jury. The witnesses who would have testified included three teenagers who were also involved in the murders—Alton Smith, John Morris, and Eric Anderson—, homicide detectives, and medical witnesses. [N.T., January 11, 1986, pp. 39–47]. The prosecutor noted that the witnesses would testify that the Appellant met with Smith, Morris, and Anderson on the day before the murders were committed, asked them if they wanted to make money, and informed them that he knew of an old couple who had money. The four of them then went to the home of Allan Williams to obtain a syringe which the Appellant had found and given to Williams. In a statement given to the police subsequent to his arrest, the Appellant indicated that the syringe was to be used to inject air into the victims' veins in an attempt to make it appear they had

suffered heart attacks. Williams was not at home, and the four proceeded next to the Gibsons' house. They tried to enter through the front door, but it was locked. The side window was tried, but it was covered with bars. At this point, the teenagers left and split up. There was an agreement between the Appellant and Smith to meet the next day.

Smith returned to the Appellant's house the next day as planned. Joined by Morris and Anderson, they again discussed the possibility of obtaining money from the Gibsons. Anderson produced a crowbar, and the Appellant had a chef-type knife and clothesline, which he concealed in his clothing. Returning to Williams's house for the syringe, they were told it had been lost. Accompanied by Williams, they went to a garage located on an abandoned piece of property near the Gibson residence. It was decided that Morris would go to the victims' house, which he did. Morris was asked to run an errand for Mrs. Gibson. The others went back to Williams's house where they plotted with Morris. As planned, Morris left the Gibsons' door open, and they followed him into the house.

As they entered the living room, they grabbed the Gibsons. Mrs. Gibson was knocked to the floor as she tried to grab a hammer to protect herself. Mr. Gibson also tried vainly to reach a weapon. The Gibsons were then tied to chairs with the clothesline. Morris, Smith, and Anderson searched the second floor rooms while Williams and the Appellant searched the living room. When a safe was discovered, the Appellant asked Mr. Gibson for the combination. Mr. Gibson did not have it. At Williams's urging, Smith made continuous trips up and down the stairs, checking the door to insure that no one was coming. During one of the trips, Smith noticed that the Appellant had pulled out his knife. He saw the Appellant push back Mrs. Gibson's head and cut her neck with a sawing motion. Mr. Gibson cried. The Appellant walked towards Mr. Gibson and cut his throat. Smith called for Morris and Anderson, saying it was time to get out of there. They left, followed by

Williams. The Appellant returned to where Mrs. Gibson was seated and stabbed her once in the chest. He then repeated his act, stabbing Mr. Gibson twice in the heart. The Gibsons died as a result of those wounds.

The five youths returned to Williams's home with various personal possessions of the Gibsons. They agreed to meet at the Appellant's house and went there by two different routes. The Gibsons' property was divided among them, with each receiving approximately $160—$170 in cash. The Appellant cleaned his knife and placed it back in its holder.

Aware that a warrant had been issued for his arrest, the Appellant turned himself in the following day. He confessed to the murders. A taped recording was made of his confession. A subsequent search of his house uncovered miscellaneous items, such as coin and bill holders, tire guages, and coins, which had been taken from the Gibsons.

After conducting a guilty plea colloquy with the Appellant and presentation of the Commonwealth's evidentiary summary, the trial judge accepted the plea and determined that the Appellant was guilty of first degree murder on both counts. A separate sentencing hearing was conducted before the jury. The jury returned the death penalty based upon its finding of four aggravating circumstances which outweighed any mitigating circumstances. The aggravating circumstances found by the jury were: (1) the victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses; (2) the defendant committed a killing while in the perpetration of a felony; (3) the offense was committed by means of torture; and (4) the defendant has been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable. 42 Pa.C.S. § 9711(d)(5), (6), (8), (10). The jury did not enumerate the specific mitigating circumstances which were found, but defense counsel had argued against a death sentence because the Appellant was 18 years old at the time the crimes

were committed and had no significant history of felony convictions. Defense counsel had contended also that the Appellant could not appreciate the criminality of his conduct or conform his conduct to the requirements of law and introduced testimony of the Appellant's character, remorsefulness, and religious involvement.

## I. SUFFICIENCY OF THE EVIDENCE

■ Although the Appellant does not challenge the sufficiency of the evidence, we will conduct an independent review of the record to determine the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh. den.*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). We find that the evidence establishes beyond a reasonable doubt that the killings committed by the Appellant were willful, deliberate and premeditated and that the convictions of murder of the first degree are sustained by sufficient evidence.

## II. SENTENCING PHASE

The Appellant asserts that the jury's findings of two of the aggravating circumstances were not supported by the evidence. Specifically, the Appellant challenges the jury's determination: (1) that a victim was a prosecution witness to a murder or felony killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving the offense, and (2) that the offense was committed by means of torture. Upon examination of the record, we conclude that there is insufficient evidence to establish these two aggravating circumstances beyond a reasonable doubt.

■ The Commonwealth argues that the jury properly found that the prosecution witness had been killed to prevent his testimony against a defendant. It does not contend that anyone witnessing a crime is a prosecution witness within the scope of the aggravating circumstance, but argues that the burden of establishing the aggravating circumstance was met by showing that the Appellant stated in

his confession that he had killed the victims because of his concern that they could later identify the five youths.[1] We recently rejected this expansive interpretation in *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987). We held therein that in order to sustain a finding of the aggravating circumstance set forth in § 9711(d)(5), evidence must be introduced to establish that the victim was a prosecution witness who was killed to prevent his testimony in a pending grand jury or criminal proceeding. In the instant case, no grand jury or criminal proceeding involving an offense to which either of the victims was a prosecution witness was pending at the time the murders were committed.

We find also that the Commonwealth's evidence failed to support the jury's finding that the offense was committed by means of torture. The Commonwealth argues that the deliberate acts of the Appellant of binding the victims to chairs facing together and slashing Mrs. Gibson's throat in full view of a husband who was unable to aid her, and the fact that death did not result instantaneously, are sufficient to uphold the jury's determination. In order to establish that the offense was committed by means of torture, the Commonwealth must prove that a defendant had a specific intent to inflict unnecessary pain, suffering, or both pain and suffering in addition to the specific intent to kill. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985). Neither the efficacy of the means employed by a defendant to murder his victim nor the immediacy of death is in itself determinative of the question whether the offense was committed by means of torture. Although the evidence relied upon by the Commonwealth amply demonstrates the Appellant's specific intent to kill his victims, it is insufficient to establish that the Appellant specifically intended to cause pain and suffering or was not satisfied with the killings alone.

1. The confession itself was read to the jury during the sentencing hearing, although the Appellant's verbatim statements had not been disclosed in the Commonwealth's summary of the evidence.

▮▮▮▮ Having determined that the evidence failed to support the jury's findings of two of the four aggravating circumstances, the question then is the appropriate remedy in this case. Citing 42 Pa.C.S. § 706, the Commonwealth asserts that if the Appellant were to prevail on his challenge to the aggravating circumstances, the matter should be remanded for a new sentencing hearing. Section 706 provides that

An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances.

This argument must fail, however, for as we found in *Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987), our authority to review death sentences is limited by 42 Pa.C.S. § 9711(h)(2) which states that

In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.

We held that § 9711(h)(2) constituted a clear restriction on our general power pursuant to § 706 and that we do not have the authority to remand for a new "trial" only as to the question of the penalty.

Although *Williams* involved a jury trial, rather than a guilty plea with a jury's determination as to the sentence, we do not believe that § 9711(h)(2) permits a different result based upon this distinction. This Court's authority upon review of a sentence of death is limited to two alternatives—that the sentence be either affirmed or vacated and the matter remanded for imposition of a life imprisonment sentence. The jury's finding of four aggravating circumstances, two of which are unsupported by the evidence, and unspecified mitigating circumstances requires that the death sentences imposed on the Appellant be vacated. *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d

1075 (1987); *see also Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985) (plurality), *cert. denied,* 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986). Because of our disposition of this issue, we need not address the remaining contentions raised by the Appellant.

While constrained to vacate the sentences and remand for imposition of life imprisonment, we observe that the legislative limitation on our authority in § 9711(h)(2) may be unduly restrictive in cases such as this one. The weighty responsibility and burden placed upon this Court in its review of capital cases is made more so by our inability to remand a case for a new sentencing proceeding when the Commonwealth has introduced evidence of aggravating circumstances which was properly before a sentencing body for consideration.

As noted in the concurring opinion of Chief Justice Nix in *Williams,* in which Justice McDermott joined, the authority to remand for resentencing would protect society as well as the defendant who complains of error during the sentencing phase. Where, as here, a sentence of death may be fully justified by evidence of proper aggravating circumstances, the defendant's interests have been protected by appellate review, but the interests of society have not been well-served. Preclusion of the reimposition of a death sentence may ultimately impinge upon the defendant's interests as well if it engenders a reluctance to vacate such a sentence, albeit unintentionally. This unfortunate result could be avoided by permitting this Court to remand for resentencing. Such a clarification must be left to the legislature, however, in light of the language of § 9711(h)(2).

Accordingly, we affirm the judgments of sentence on the charges of burglary, robbery, and conspiracy; we vacate the judgments of sentence of death and remand for the imposition of life sentences.

PAPADAKOS, J., filed a concurring and dissenting opinion.

LARSEN and McDERMOTT, JJ., filed a dissenting opinion.

PAPADAKOS, Justice, concurring and dissenting.

I join that portion of the majority opinion which affirms Appellant's convictions of murder of the first degree, but must dissent from the vacation of the sentences of death and the imposition of life sentences in this case.

First, I dissent from the majority's conclusion that our Death Penalty Statute does not permit this Court to affirm a sentence of death when we find that one aggravating circumstance is unsupportable by the record where there are mitigating circumstances found by the jury. See my dissenting opinion in *Commonwealth v. Aulisio*, 514 Pa. 84, 522 A.2d 1075 (1987).

Secondly, I disagree with the majority's conclusion that the evidence presented during the sentencing phase was insufficient to support a finding of aggravating circumstance 8, 42 Pa.C.S. § 9711(d)(8), (namely, that "the offense was committed by means of torture") based on my dissenting opinion in *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987).

I also dissent to the majority's conclusion that the Commonwealth must introduce evidence of a specific intent to torture *separate and apart* from the acts leading to a victim's death in order to support a finding of aggravating circumstance 8. As we made clear in *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985), the element of intent can be inferred from the circumstances of the case. In that case, we noted that torture was more than present and inferred same by the number of blows, manual strangulation, asphyxiation, and continued traumatization of the body after death.

Here, Appellant brought a knife and rope with him to the murder scene intending to tie and kill his victims, an elderly husband and wife, who had hired him to do odd jobs in the past. After overpowering the couple, the elderly people were bound in chairs facing each other. The couple were seated in the living room and forced to watch while their home was pillaged by Appellant and his co-conspirators. As the pillage ended, Appellant pushed back the head of

Sarah Gibson and, using a sawing motion, sliced the throat of Mrs. Gibson in full view of her husband, who was seated facing her, only seven feet away, and unable to help her. Ignoring the pleas and cries of Boykin Gibson, Appellant sliced his throat in the same manner. As Mrs. Gibson sat helplessly bleeding, Appellant returned to her and stabbed her in the chest. Appellant then turned back to Mr. Gibson and stabbed him twice in the chest. Knowing that his actions had not killed his victims, Appellant left the Gibsons in that condition to die an agonizing death. Appellant could perceive signs of life in these two old people when he returned to the house to remove evidence of his actions, and again left his victims alone to die witnessing each other's agony.

In my view, this evidence, and all reasonable inferences therefrom, is more than enough to establish a finding that Mr. and Mrs. Gibson met their death by means of torture. And this is all that the statute requires. The legislature has not seen fit to add "Specific Intent" as an element to aggravating circumstance 8. The majority now rewrites the statute to include specific intent and, in effect, exonerates those tortuous deaths which occur as the result of bunglers who never formed the specific intent to kill by means of torture.

As in *Pursell*, the intent to subject the Gibsons to heinous, atrocious or cruel suffering can be inferred from the circumstances of this case. To conclude that the element of specific intent to torture cannot be proved by examining the acts themselves, in effect, reverses *Pursell*, a case in which this entire court joined except for the Chief Justice and Mr. Justice Zappala only two years ago.[1]

By arbitrarily discarding recent precedent, the majority "bring(s) adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and this train only." *Mezvinsky v. Davis*, 500 Pa. 564, 570, 459 A.3d

---

**1.** I note that even though the Chief Justice dissented in *Pursell*, he agreed with the majority that the specific intent to torture could be proved by the nature and force of the acts themselves.

307, 310 (1983), (Roberts, C.J., dissenting and citing *Smith v. Allwright,* 321 U.S. 649, 669, 64 S.Ct. 757, 766, 88 L.Ed. 987 (1944)).

Accordingly, I must dissent to that portion of the opinion which vacates the penalties of death. I would affirm both convictions and penalties in this case.

LARSEN, Justice, dissenting.

I dissent and I would affirm the judgments of sentence of death entered by the jury of the Court of Common Pleas of Allegheny County.

Under the interpretations previously adopted by a majority of the members of this Court, two of the four aggravating circumstances found by the jury cannot be sustained, namely that the victim was a prosecution witness to a murder or other felony committed by appellant and was killed for the purpose of preventing his testimony in a grand jury or other criminal proceeding, and that the killing was committed by means of torture. 42 Pa.C.S.A. § 9711(d)(5) and (8). *See* respectively *Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334 (1987) (with Larsen, J., dissenting, joined by McDermott and Papadakos, JJ.), *and Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987) (dissenting opinions by Larsen, McDermott and Papadakos, JJ.). However, I cannot subscribe to the majority's conclusion that our invalidation of two of the four aggravating circumstances found by the jury necessarily requires this Court to vacate the sentences of death. The majority states: "The jury's finding of four aggravating circumstances, two of which are unsupported by the evidence, and unspecified mitigating circumstances requires that the death sentences imposed on the Appellant be vacated." Majority slip op. at 817 (citations omitted).

I adhere to the position that, where the jury finds multiple aggravating circumstances and some mitigating circumstances, and imposes the death penalty upon its determination that those aggravating circumstances outweigh the mitigating, this Court need not automatically vacate the

sentence of death upon invalidation of one or more (but less than all) of the aggravating circumstances. In fact, such automatic vacation of a sentence of death in these circumstances is in direct contravention of the statutory standard of review as established by the General Assembly. *See, e.g., Commonwealth v. Aulisio,* 514 Pa. 84, 100–105, 522 A.2d 1075, 1083–85 (1987) (Larsen, J., dissenting, joined by McDermott, J.) *and* at 514 Pa. 108–110, 522 A.2d 1087–88 (Papadakos, J., dissenting, expressing same view); *see also Commonwealth v. Crawley, supra* at 514 Pa. 565–567, 526 A.2d 347–48 (Larsen, J., dissenting, joined by McDermott and Papadakos, JJ.) As I stated in *Aulisio,*

It is simply not true that "the sentencing statute" requires us to vacate a sentence of death where we have invalidated one of multiple aggravating circumstances found by a jury which has also found the existence of some mitigating circumstances.

The Sentencing Code provides that:

(3) The Supreme Court shall affirm the sentence of death *unless it determines that:*

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) *the evidence fails to support the finding of an aggravating circumstance* specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S.A. § 9711(h) (emphasis added).

Here, the evidence clearly "supports the finding of an aggravating circumstance specified in subsection (d)," namely that appellant was convicted of another offense committed at the same time for which a sentence of death was imposable. 42 Pa.C.S.A. § 9711(d)(10). Thus, assuming for the sake of argument *only* that there was insufficient evidence to support *one of the aggravating circumstances,* the continuing vitality of the remaining

aggravating circumstance requires that we *affirm* the sentence of death *unless* we determine that it was *"the product of* passion, prejudice or any other arbitrary factor." This Court should review the entire record to determine *whether* consideration of an improper or un-supported aggravating circumstance so infected the jury's deliberations and determination as to render the sentence of death the product of passion, prejudice or an arbitrary factor.

514 Pa. at 102, 522 A.2d at 1084.

In the instant case, I have no doubt that the sentences of death were imposed because of the evidence of the brutal executions of the two elderly victims and of the two valid aggravating circumstances, and that those sentences were not the result of the jury's consideration of aggravating circumstances for which there is insufficient evidence or any other arbitrary factor. There is ample evidence to support the jury's finding that the double homicide was deliberately committed in order to prevent the robbery victims from identifying their assailants. 42 Pa.C.S.A. § 9711(d)(6). ("The defendant committed a killing while in the perpetration of a felony.") There is also overwhelming evidence to support the jury's finding that appellant had been "convicted of another ... State offense, committed ... at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." 42 Pa.C. S.A. § 9711(d)(10).

While we do not know exactly which mitigating circum-stances were found by the jury, we do know that evidence was presented regarding appellant's young age at the time of the killings (eighteen years), that he had no significant history of felony convictions, that appellant could not appre-ciate the criminality of his conduct or conform his conduct to the law, and regarding appellant's character, remorseful-ness, and religious involvement. 42 Pa.C.S.A. § 9711(e)(1), (3), (4) and (8). The psychological and other evidence intro-duced at the sentencing hearing regarding appellant's ca-pacity to appreciate the criminality of his conduct or con-

form his conduct to the law was simply not persuasive, and the record evidence established the contrary, namely that neither appellant's age, immaturity nor mental condition prevented him from coldly calculating, planning and executing his scheme to rob and murder two elderly victims who would be easy prey for his gang. Indeed, he had originally planned to make the murders appear to be heart attacks, but these plans were scuttled when appellant could not procure a syringe with which to inject air into his victims' veins. I also find the evidence of appellant's lack of a significant history of felony convictions and of his character to be relatively miniscule in light of his conduct which, more than anything else ever could, unmistakeably demonstrated his violent nature and his cold, menacing murderous character. Slashing the throats and stabbing the chests of his helpless victims, who had been tied face to face so that each could view the violence done to the other, was not the last-minute desperation decision of a good boy gone bad, a lad who "just happened" to get caught-up in events on one occasion. Rather, appellant masterminded the robbery-murder conspiracy and intended all along to eliminate his victims.

Under these circumstances, I have conducted the review mandated by statute, and I conclude that the sentences of death were not the result of "passion, prejudice or any other arbitrary factor," but were, rather, the result of the brutal facts and the evidence overwhelmingly demonstrating the existence of two aggravating circumstances which outweighed any mitigating circumstances. I would, therefore, affirm the sentences of death.

McDERMOTT, Justice, dissenting.

In *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987), this Court held that the killing of a witness in a "pending" criminal proceeding was an aggravating circumstance under section 9711(d)(5) of the Sentencing Code, 42 Pa.C.S. § 9711(d)(5). The majority interpreted the section to cover the killing of any witness in any type of "pending"

criminal proceeding. It should be noted however that the qualification of "pending" is not contained in section 9711(d)(5).

The gravamen of section 9711(d)(5) is, as Mr. Justice Zappala noted, to punish a "frontal assault" on the judicial process. In the instant case the appellant admitted that he killed to forestall an identification. Certainly an admitted preemptive strike is a "frontal assault" on the judicial process; and I see no difference in the interest to be vindicated between the present situation and a technically "pending" criminal proceeding. Therefore, under the facts of this case, I think the prerequisite of section 9711(d)(5) was satisfied.

In addition I believe that the intentional cutting of a wife's throat in the presence of her husband constitutes the intentional infliction of pain above and beyond the act of also killing the husband. *See Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985).