539 A.2d 780

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Martin Daniel APPEL, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 9, 1987.

Decided March 4, 1988.

Concurring Opinion March 28, 1988.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The instant case comes before this Court on automatic direct appeal, pursuant to section 9711(h) of the Sentencing Code, 42 Pa.C.S. § 9711(h), from sentences of death imposed by the Court of Common Pleas of Northampton County on three counts of first degree murder. The appellant, Martin Daniel Appel, has, throughout these proceedings, waived his right to counsel, and has declined to file a brief on his own behalf.[1] Appellant has, in fact, expressed his desire to die in the electric chair, and views the instant appeal merely as an impediment to that end. Nevertheless, automatic review by this Court in all cases in which the sentence of death has been imposed is an integral and absolutely essential procedural safeguard prescribed by the legislature in the enactment of Pennsylvania's death penalty statute, 42

---

1. Pursuant to appellant's instruction, no brief has been submitted by appellant's court-appointed standby counsel.

Pa.C.S. § 9711. Thus, although no issues have been presented for our consideration in this matter, we must fulfill our statutory obligation by examining the record lodged in this Court to ensure that the sentences imposed comport with the requirements of our death penalty statute and may be legitimately executed. Our task, therefore, is to determine, first, whether the evidence is sufficient to support appellant's three convictions of first degree murder, *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh. denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983), and second, whether the sentences were "[T]he product of passion, prejudice or any other arbitrary factor," 42 Pa.C.S. § 9711(h)(3)(i); whether the evidence supports the finding of a valid aggravating circumstance, 42 Pa.C.S. § 9711(h)(3)(ii); and whether the sentences are excessive or disproportionate to the penalty imposed in similar cases, 42 Pa.C.S. § 9711(h)(3)(iii).

Prefatory to undertaking our mandatory review, we feel it is appropriate to set forth a brief procedural history of this case. Appellant and a co-defendant were arrested on June 6, 1986, in connection with a bank robbery on the same day in East Allen Township, Northampton County, in the course of which three persons were killed and two others seriously injured. Appellant was brought before the trial court on June 12, 1986, at which time he indicated his desire to represent himself and expressed concern that professional representation would hamper the prosecution's case against him. N.T. June 12, 1986 at 22. The trial court then conducted a thorough colloquy on the question of waiver and ordered a psychiatric evaluation as to appellant's competency to make a knowing, voluntary and intelligent decision to waive his right to counsel. A psychiatrist's report, received by the trial court on June 20, 1986, expressed the professional opinion that appellant was suffering from no mental disorders and was competent to make such a decision. Appellant was again brought before the trial court and repeated his intention to proceed without counsel. The court then accepted appellant's waiver and appointed two

members of the Northampton County public defender's office to serve as standby counsel. *See* Pa.R.Crim.P. 318(d).

Appellant subsequently waived his preliminary hearing, and, on July 20, 1986, pleaded guilty to three counts of criminal homicide, two counts of attempted homicide, one count of robbery, two counts of aggravated assault and various other charges. Appellant's request to plead guilty to first degree murder on the criminal homicide counts was refused. Instead, pleas were entered to murder generally.

A degree of guilt hearing was conducted beginning on August 7, 1986. The Commonwealth presented extensive testimony and numerous exhibits over a three-day period. After the conclusion of the hearing on August 9, 1986, the trial court found appellant guilty of three counts of first degree murder. Appellant was subsequently informed of his right to counsel during the sentencing phase of the proceedings and again waived counsel. The Commonwealth presented no additional evidence at the sentencing hearing. Appellant testified in support of the validity of his guilty pleas and indicated that he would not appeal from whatever judgments of sentence might be imposed. He also offered as mitigating circumstances the facts that he had no prior felony convictions and was employed at the time of the commission of the crimes of which he had been convicted. Appellant then expressed the view that the death penalty was the only possible verdict and requested that he be sentenced to death.

During closing argument, the Commonwealth urged the court to sentence appellant to death. When questioned as to his position, appellant again requested the death penalty. After deliberation, the sentencing court returned a verdict of death on all three counts of first degree murder. That court found that two aggravating circumstances had been proven beyond a reasonable doubt: that the victims were killed to prevent their testimony against him in a criminal proceeding, 42 Pa.C.S. § 9711(d)(5), and that the killings were committed in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6). The court also found one mitigating circum-

stance, appellant's lack of a prior record of felony convictions, but concluded that the aggravating circumstances outweighed that factor in mitigation. Appellant declined to file any post-verdict motions and, on September 3, 1986, the death sentences as well as consecutive sentences on related charges were formally imposed. Notwithstanding appellant's desire that no appeal be filed on his behalf, the record was subsequently transmitted to this Court in accordance with Rule 1941 of the Rules of Appellate Procedure.

As stated above, our first responsibility is to determine whether the evidence was sufficient to support appellant's conviction of first degree murder. The standard to be applied in making that determination is well-established. As we recently stated in *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987):

> Our well-established standard in conducting this inquiry is whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish the elements of that offense beyond a reasonable doubt. *Commonwealth v. Nelson*, [514] Pa. [262], 523 A.2d 728 (1987); *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986). The Crimes Code defines murder of the first degree as "[a] criminal homicide ... committed by an intentional," *i.e.*, "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). *See Commonwealth v. Nelson, supra*, [514 Pa.] at 270, 523 A.2d at 732.

*Id.*, 516 Pa. at 466, 533 A.2d at 76-77.

Assessed in accordance with the test set forth above, the evidence adduced overwhelmingly supports appellant's first degree murder convictions. The testimony establishes that, in early May of 1986, appellant decided to rob a bank. He enlisted the aid of a friend, Stanley Herzog, believing that his plan would require at least two persons in order to ensure that all persons who might be in the bank at the time of the robbery could be executed before an alarm could be pressed. It was also crucial to appellant's plan that no eyewitness survive. The East Allen Township branch of

the First National Bank of Bath was selected as the target. Preliminary to the actual robbery, appellant and Herzog broke into the bank during the early morning hours of May 29, 1986, to ascertain the nature of the layout of the bank and the nature of its security system. During this burglary, the two men vandalized the bank in an attempt to deceive the police as to the purpose of the break-in. Appellant and Herzog then purchased handguns, appellant selecting a nine millimeter handgun for maximum "firepower." They practiced for the robbery by shooting at human silhouette targets. Appellant also took measures to estimate the time it would take the police to respond in the event the robbery would be reported while in progress.

On June 6, 1986, appellant and Herzog drove to the vicinity of the bank. Appellant, using a pay telephone, communicated a bomb threat to the airport located across the street from the State Police barracks closest to the targeted bank. He also telephoned the bomb threat to an Allentown radio station as well as the Allentown police. Appellant and Herzog then drove to the bank, entered, concealing their handguns, and each approached tellers' windows for the ostensible purpose of obtaining change. Appellant shot both tellers in the back as they were attempting to comply with the request. One, Janice Confer, fell to the floor wounded. The other, Hazel Evans, was killed instantly. Appellant next fired two shots at the branch manager, Marcia Hauser, but missed. He then shot across the lobby at a bank official, Jane Hartman, and a customer with whom she had been conversing. The customer was wounded but survived. Ms. Hartman dropped to the floor and hid under her desk. Appellant then ran across the lobby and shot her twice in the back, killing her instantly. In the meantime, Herzog had entered Ms. Hauser's office and shot her through the head. She survived but is permanently disabled.

Appellant and Herzog then proceeded behind the teller's counter to collect the deadly object of their greed. Appellant discovered, however, that Ms. Confer, one of the tellers he had shot, was still alive. In accordance with his master

plan, he shot her again in the back, the bullet penetrating her heart and lungs and causing her death. The robbers had collected approximately $2,280.00 when an automobile approached the bank's drive-in window, whereupon they fled in appellant's vehicle.

Appellant and Herzog were apprehended by the State Police approximately two hours and thirty minutes later. Appellant subsequently gave full and complete confessions to an agent of the Federal Bureau of Investigation and to a State Police Trooper.

■ The preceding description of the circumstances and motivations that led to the death of three persons is based on the defendant's recounting of the events in his confessions and the testimony of persons who were eyewitnesses to portions of the events. In light of the court-ordered psychiatric examination that found the defendant to be competent at the time of his trial and the absence of any evidence that he was incompetent at the time he gave his confessions or that his confessions were in any manner coerced, we can only conclude that the evidence supports beyond a reasonable doubt the trial court's findings that defendant was guilty of three counts of first degree murder. The evidence is overwhelming that the defendant intentionally killed three persons pursuant to a premeditated plan to rob a bank and escape prosecution or conviction for his crime by killing all of the eyewitnesses to the robbery.

■ As noted above, during trial, sentencing, post-trial and appeal of this case the defendant has knowingly and voluntarily waived representation by counsel. At each stage of the proceedings below the trial court carefully advised the defendant of the criminal charges against him, of his right to counsel at any point, and of his right to a trial by jury. The court appointed two attorneys who served as standby counsel throughout the proceedings. The defendant, a college graduate, voluntarily and knowingly waived his right to counsel and to a jury trial. The trial court scrupulously reviewed all of the evidence relevant to guilt and to sentencing. We have carefully reviewed the

record of the trial court proceedings and can find no evidence that the sentences were the product of passion, prejudice or other arbitrary factor and thus find no basis for upsetting the death sentence on these bases.

In reaching the conclusion that the drastic sentence of death was appropriate in this case the trial court pointed to the aggravating circumstances that the defendant killed three persons during the commission of a felony, 42 Pa.C.S.A. § 9711(d)(7), and that the motivation for the killings was to prevent the victims from being witnesses against him in any prosecution, 42 Pa.C.S.A. § 9711(d)(5). The evidence supports the trial court's finding of these aggravating circumstances and we find no reason to overturn the sentence on the basis of insufficient evidence of statutorily recognized aggravating circumstances.[2] Moreover, the trial court found a mitigating circumstance in the absence of any significant history of prior convictions of defendant, but further found that the aggravating circumstances outweigh the mitigating circumstance. Our review of the record has produced no basis for overturning that finding.

2. The instant case is distinguishable from the issue confronted in *Commonwealth v. Caldwell,* 516 Pa. 441, 532 A.2d 813 (1987), and *Commonwealth v. Crawley,* 514 Pa. 539, 526 A.2d 334 (1987). In those cases we held that the aggravating circumstance defined in 42 Pa.C.S. § 9711(d)(5) requires that the motive for the killing of the victim must be the intent to remove that individual as a witness. It is the fully formed intent prior to the event to kill a potential witness that provides the animus upon which this particular aggravating circumstance rests. As indicated in *Commonwealth v. Crawley, supra,* the obvious intention of the drafters was to address this "type of frontal assault upon the criminal justice system." *Id.,* 514 Pa. at 561, 526 A.2d at 345. To emphasize this thrust, the Court created the "pending" requirement. *See Commonwealth v. Caldwell* and *Commonwealth v. Crawley, supra.* While this concept was superimposed upon 42 Pa. C.S. § 9711(d)(5), it served to limit the application of that section to clear instances where the requisite animus was present. In this instance, however, it is clear that the requisite animus was present, since the predesigned purpose for the killings was to eliminate the potential of witnesses in a prosecution against appellant and his accomplice. To insist upon the court-created device in this case would exalt form over substance and result in denying the application of this aggravating circumstance in a case where it was clearly intended to be applied.

Finally, we must determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3)(iii). We find that it is not. In reaching this conclusion we rely on information contained in the comprehensive study conducted by the Administrative Office of Pennsylvania Courts pursuant to our mandate in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied,* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). This study, entitled "Pennsylvania Death Penalty Study", reviews all cases resulting in a conviction for murder in the first degree from September 13, 1978 to date. As we stated in *Commonwealth v. Peterkin,* 511 Pa. 299, 329, 513 A.2d 373, 388 (1986), a review of the information in this report reveals:

[I]n all cases such as this one, in which the defendant has committed two or more first degree murders while in the course of a felony, was the actual killer as opposed to merely an accomplice, and has been tried, convicted and sentenced by a jury, the death penalty has been imposed, despite the defendant's lack of a significant history of prior criminal convictions.

Cases decided subsequent to *Commonwealth v. Peterkin, supra,* have reached the same conclusion in similar circumstances. *See e.g. Commonwealth v. Clayton,* 516 Pa. 263, 532 A.2d 385 (1987); *Commonwealth v. Sneed,* 514 Pa. 597, 526 A.2d 749 (1987); and *Commonwealth v. De-Hart,* 512 Pa. 235, 516 A.2d 656 (1986).

■ In light of the information contained in the "Pennsylvania Death Penalty Study" and our independent review of

We maintain the position that the existence of this aggravating circumstance cannot be established circumstantially unless the victim was in fact a witness in a pending grand jury or criminal prosecution. However, the killing of a potential Commonwealth witness before either of these bodies results in the same frontal assault upon the criminal justice system. To ignore this erosion in the process where it can be established by direct, rather than the less reliable circumstantial evidence, would unduly restrict the obvious legislative intent. Therefore, we will permit a finding of the existence of this particular aggravating circumstance where the killing results from the intention to eliminate a potential witness, if such facts can be established by *direct* evidence. Such is the case here.

the entire record in the present case, we conclude that the death sentence in the present case was neither excessive nor disproportionate to penalties imposed in similar cases.

Having conducted an independent review of the entire record in the present case and considered all possible bases for overturning the conviction or the sentence and finding none, we are compelled to sustain the conviction of first degree murder and affirm the sentences of death.

Accordingly, the judgments of sentence are affirmed.

PAPADAKOS, J., joins in the majority opinion and files a concurring opinion.

LARSEN and ZAPPALA, JJ., concur in the result.

PAPADAKOS, Justice, concurring.

I join in this opinion and agree that the evidence supports the finding of aggravating circumstance 5 (42 Pa.C.S. § 9711(d)(5)). Although I would not distinguish the instant case from the issue confronted in *Commonwealth v. Caldwell*, 516 Pa. 441, 532 A.2d 813 (1987), and *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987), I agree with the conclusion of footnote 2 (At 784) that aggravating circumstance five (5) is satisfied if the motivation for the killing is to prevent the victim from being a witness against the killer in any prosecution that may be brought against the killer.