# Commonwealth v. Starr

*Kim W. Reister, William Brennan* and *Bruce S. Ledewitz,* for defendant

MANNING, *J.*, August 19, 1988 — This court has been asked to give its immediate consideration to defendant Gary Starr's request to represent himself at trial on the charge of criminal homicide. The commonwealth has informed the court it will be seeking the death penalty in this case. Defendant was represented by the Office of the Public Defender from shortly after his arrest until June 22, 1988. At that time, defendant asserted his right to proceed pro se despite strenuous objections by appointed counsel. The Honorable Robert E. Dauer, Administrative Judge, appointed "standby" counsel to assist him.[1] Thereafter, at two separate pretrial hearings

---

1. Appointed counsel Kim W. Riester, Esq., William Brennan, Esq., and Duquesne University Law School Professor Bruce S. Ledewitz.

on July 26, 1988 and August 15, 1988, where motions to suppress and motions to prohibit the commonwealth from seeking the death penalty were filed, defendant relented and allowed appointed counsel to represent him and conduct both proceedings. Now, on the eve of trial, defendant asserts he is more prepared and, consequently, more capable of questioning witnesses than are presently appointed "standby" counsel. As such, we must review defendant's waiver of counsel and determine whether to grant his waiver in view of his election to proceed pro se at trial.

First, it is quite clear that a criminal defendant has a Sixth Amendment right to represent himself. *Faretta v. California,* 422 U.S. 806 (1975). Further, the Pennsylvania Supreme Court has recognized that the right to defend oneself holds true even in a capital case. *Commonwealth v. Szuchon,* 506 Pa. 235, 484 A.2d 1365 (1984), citing *Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324 (1978). The threshold question for testing the validity of a waiver of counsel is whether the defendant's waiver is voluntary and is made knowingly and intelligently. See *Commonwealth v. Davis.* To be a knowing and intelligent waiver, a defendant must be aware of and understand both the right and risks of giving up that right. *Commonwealth v. Barnette,* 445 Pa. 228, 285 A.2d 141 (1971).

Second, if the court decides to accept a defendant's waiver of counsel, standby counsel may be appointed to advise a pro se defendant. See Pa. R. Crim. P. 318(d). Moreover, our Supreme Court has stated that where the right to counsel has been waived in a capital case, the appointment of standby counsel is strongly advised. See *Szuchon,* 506 Pa. at 250, 484 A.2d at 1376-7. Also, see *Commonwealth v. Appel,* 517 Pa. 529, 539 A.2d 780 (1988).

The third and final option is, of course, to reject defendant's waiver. Such a determination is facilitated, at a minimum, by the comment to Pa. R.Crim. P. 318 which sets forth six recommended and non-inclusive areas which the court should explore before accepting a waiver of counsel.[2] With this as our preliminary guide, we turn our attention to this court's examination of defendant as well as the initial waiver of counsel hearing held before the Honorable Robert E. Dauer.

At defendant's June 22, 1988, hearing, appointed counsel assiduously argued the defendant was not "[c]ompetent [to waive counsel]." Counsel further noted that defendant has "[a] history of psychiatric illness; that defendant is taking prescribed behavior modifying drugs; and that defendant, himself, stated he knew he was "[b]etter off having an attorney represent [him]."

---

2. (1) The defendant understands he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent.

(2) That the defendant understands the nature of the charges against him and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defendant, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

While it is difficult for the court to either identify or fashion a set of guidelines for determining whether defendant's waiver is valid, it is apparent we must act with an abundance of caution before passing on the validity of such a waiver. This is particularly evident at this stage of the proceeding since it is here, at defendant's trial, that the right to counsel is most critical. Unlike a setting of custodial interrogation, where defendant may waive the "advice" of counsel and where representation may be appropriately characterized, for lack of a better term, as "passive," the right to counsel at trial encompasses something much more; that being the art of advocacy. It is this type of affirmative, aggressive representation, or the most "active" dimension to defendant's right to counsel, that defendant is seeking to waive. It is incumbent upon this court to carefully scrutinize defendant's attempt to waive his constitutionally guaranteed right to representation at trial.

With this in mind, it is instructional to note that numerous federal courts have concluded that the constitutional right to proceed pro se is not absolute. See *United States v. Grandison,* 780 F.2d 413 430 (4th Cir. 1985); *United States ex rel. George v. Lane,* 718 F.2d 226, 232 (7th Cir. 1983); *United States v. Wilson,* 690 F.2d 1267, 1271-2 (9th Cir. 1982). The fact that this right is not absolute speaks clearly to the court's obligation to be certain that defendant's waiver is not only voluntary and knowing, but that it has been intelligently made.

Since it is the court's responsibility to ensure that each and every waiver of a constitutional right is founded upon sound reasoning and understanding, not only of the constitutional right, but of the ramifications of waiving that right, it is not so difficult to understand why the courts have consistently relied

upon the precepts of a "knowing" and "intelligent" waiver. These maxims, along with the notion of voluntariness, are indispensable prerequisites for a valid waiver of counsel. *Commonwealth v. Davis,* 479 Pa. at 283, 388 A.2d at 325.

Instantly, the court cannot ignore what has transpired at the June 22, 1988 hearing. Nor can we diminish the impressions we have drawn from our own in-court examination of defendant. Gary Starr is not someone whose rush to trial has been motivated by a reasoned and intelligent belief that he alone can best represent himself since he has had more time to prepare his case than have appointed counsel. On the contrary, we believe the record will show that defendant's desire to expedite his case is premised largely upon his belief that the sooner he can return to the general prison population, the sooner he will be able "to watch television." With this as Mr. Starr's principal objective, we are hard pressed to conclude that such behavior paints a picture of a man who is capable of forming a rational and informed approach to the question of self-representation. For us to conclude as much would be paradoxical. Though it may not seem necessary to engage in extensive legal or linguistic analysis to conclude that defendant Starr's attempt to waive counsel is not the product of an "intelligent" choice, we have taken notice of certain incidents which further elucidate defendant's patent inability to validly execute a waiver of counsel.

Following defendant's arrest, counsel was appointed by the court. Among those appointed included a professor of law whose efforts have gained distinction nationwide for his advocacy in death penalty cases, and two very able trial attorneys with more than 25 years of criminal trial work between them. Despite appointed counsels' repeated advice

to the contrary, defendant contacted one of the detectives who had been assigned to his case in order to make certain statements relating to a knife found at the scene of the crime. Defendant had acknowledged, but ignored his right to counsel upon contacting the officers on the case. In the course of the conversation, defendant voluntarily made inculpatory statements. Defendant, thereafter, filed a pro se motion to suppress that very statement.

We do not raise this incident as a testament to defendant's unfamiliarity with the law. Nor do we cite it for the proposition that defendant is incapable of providing himself with an adequate defense. Defendant's competence is not before us. What we instead must ask ourselves is whether this action demonstrates the "good judgment and sound reflection" the law requires of one who is seeking to invoke his constitutional right to waive counsel. We find this incident is typical of defendant's erratic behavior which has led us to our good faith conclusion that defendant is simply incapable of making an intelligent decision regarding representation.

It is also painfully obvious to the court by the battery of psychiatric and neurological tests requested and ordered, that defendant's standby counsel contemplates offering testimony designed to depict some form of mental deficiency either as a defense to the charge or in mitigation of punishment. It is inconceivable to the court that a pro se defendant could credibly introduce such evidence. Again, the focus of our observation is not intended to draw attention to defendant's competence. Rather, we refer to it as yet another indication of Mr. Starr's inability to demonstrate "good judgment and sound reflection."

Though our impressions of defendant's inability to make an intelligent choice regarding his waiver

of counsel do not cease with this final example, we are very concerned by the revelation of defendant's reliance upon prescribed medications. This court asked defendant whether he has and continues to take the prescribed drugs he had acknowledged taking when queried at the June 22, 1988, hearing. He responded that he did. Further inquiries by the court revealed that defendant was taking daily doses of behavioral drugs, Thorazine and Triavil. Generally speaking, Thorazine is prescribed for individuals who are anxious, tense, apprehensive or overexcited, while Triavil is an anti-depressant, See generally, *Physician's Desk Reference,* at 1400-2, 2036-9 (1988).

While the court draws no specific conclusions as to the precise effects defendant may be experiencing as a result of the ingestion of these drugs, we believe there is sufficient medical information to support our conclusion that these behavior-modifying drugs may well have affected and continue to impair defendant's ability to execute an "intelligent" waiver of counsel.

Therefore, as we have no alternative but to proceed with an abundance of caution in this matter, due to the constitutional guarantee at issue, we must conclude that defendant's use of behavior-modifying drugs may have prevented or substantially impaired his ability to intelligently waive counsel.

Since it is incumbent upon the court to indulge in every reasonable presumption against a valid waiver of counsel, *Brewer v. Williams,* 430 U.S. 383, 404 (1977); *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938), and in view of the foregoing analysis based, in part, upon our own observations of defendant's behavior, we must conclude that defendant has not understood the technical and practical risks of self representation. See *United States v. Welty,* 674 F.2d 185, 188 (3d Cir. 1982).

As we have stated earlier, in order to ensure a valid waiver of counsel it is necessary that the court inquire into defendant's knowledge of the disadvantages of self-representation. While we have taken every precaution to afford defendant his constitutional right to self-representation, we cannot conclude that defendant is capable of intelligently waiving this right.

Despite advising defendant in the clearest possible terms of the problems attendant to self-representation, we are thoroughly convinced he does not fully and intelligently comprehend the severe disadvantages of self-representation.

The court denies defendant's request to proceed pro se and standby counsel are hereby appointed to act as counsel.

Defendant's waiver of counsel request is hereby denied.