**[J-13A&B & J-14A&B-2013]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 631 CAP |
| | : | |
| Appellant | : | |
| | : | |
| | : | Appeal from the Order entered on |
| v. | : | 8/26/11 in the Court of Common Pleas |
| | : | of Philadelphia County at No. CP-51- |
| HENRY DANIELS, | : | CR-1031751-1988 |
| | : | |
| Appellee | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 632 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | 8/26/11 in the Court of Common Pleas |
| v. | : | of Philadelphia County at No. CP-51- |
| | : | CR-1031751-1988 |
| HENRY DANIELS, | : | |
| | : | |
| Appellant | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 633 CAP |
| | : | |
| Appellant | : | Appeal from the Order entered on |
| | : | 8/26/11 in the Court of Common Pleas |
| v. | : | of Philadelphia County at No. CP-51- |
| | : | CR-1031752-1988 |
| KEVIN PELZER, | : | |
| | : | |
| Appellee | : | |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 634 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | 8/26/11 in the Court of Common Pleas |
| v. | : | of Philadelphia County at No. CP-51- |
| | : | CR-1031752-1988 |
| KEVIN PELZER, | : | |
| | : | |
| Appellant | : | SUBMITTED:  February 12, 2013 |

## CONCURRING AND DISSENTING OPINION

**MR. JUSTICE SAYLOR**                                **DECIDED:  October 30, 2014**

I join Parts I, II, and III of the majority opinion and, thus, in the affirmance of the denial of guilt-phase relief in both the Daniels and Pelzer appeals.  I also join Part IV(A), which concerns the affirmance of penalty relief favorable to Pelzer, as well as Parts V(A) and (D).  I respectfully dissent with regard to Part IV(B), which concerns the reversal of the PCRA court's award of penalty relief to Daniels.

As to the Daniels penalty verdict, I agree with the appellee and the PCRA court that trial counsel rendered deficient stewardship in: failing to present mental-health evidence demonstrating the impact of childhood abandonment, trauma, and loss upon the development of his personality and behavior for purposes of mitigation;[1] and entirely

---

[1] In a responsive opinion in a previous case, I appended a ready example of the effective use of such evidence, developed upon the cross-examination of a Commonwealth mental-health expert.  See Commonwealth v. Williams, 577 Pa. 473, 490-92, 846 A.2d 105, 116-17 (2004) (Saylor, J., concurring and dissenting).  For instance, the  forensic psychiatrist candidly acknowledged the profound psychological impact of childhood trauma and deprivation, in terms of fostering poor impulse control and lack of judgment, insight, and reasoning.  See id.  Although it may be observed that this sort of explanatory mitigation evidence may be viewed negatively by some jurors, it must also be borne in mind that the defense need only gain the support of one of twelve jurors to evade a death sentence.  See Majority Opinion, slip op. at 53; accord Wiggins v. Smith, 539 U.S. 510, 537, 123 S. Ct. 2527, 2543 (2003).  It is thus my considered judgment that the use of this sort of explanatory mitigation evidence in capital sentencing proceedings merits careful consideration, particularly as an alternative to the sorts of generic arguments which Daniels' counsel pursued as components of his presentation.  See generally Commonwealth v. Sepulveda, 618 Pa. 262, 343, 55 A.3d 1108, 1156 (2012) (Saylor, J., concurring) ("As of the time of Appellant's trial . . ., it was well understood in the training readily available to capital defense attorneys that potential mental-health issues are essentially ubiquitous in capital cases, and that childhood abuse and deprivations may substantially impact personality, cognition, and behavior."); Commonwealth v. Washington, 592 Pa. 698, 755 n.4, 927 A.2d 586, 620 n.4 (2007) (Saylor, J., dissenting) (addressing a "fairly widespread consensus that the sort of mental-health and explanatory-type life-history mitigation evidence presently (continued…)

ignoring, in his closing remarks to the sentencing jurors, the limited evidence which had been presented concerning appellee's life history, see N.T., Nov. 13, 1989, at 138-148.[2]

I have previously commented:

> The federal constitutional standard pertaining to claims of ineffective assistance of counsel places appellate courts in a difficult position where a trial attorney did not do his job. We are to essentially speculate whether each one (and every one) of twelve individuals, having twelve unique mindsets which we cannot know, would have supported a death sentence, had an appropriate presentation been made. See Wiggins v. Smith, 539 U.S. 510, 537, 123 S. Ct. 2527, 2543 (2003) (explaining that prejudice is assessed according to whether a single juror might have struck a different balance); accord 42 Pa.C.S. §9711(c)(1)(iv). An appellate no-prejudice finding can mean that a capital defendant will never receive a single trial in which he is represented by competent counsel. Indeed, such a finding is tantamount to a determination that adequate representation is merely beside the point, since the defendant never stood a

---

(…continued)
proffered by Appellant [at the post-conviction stage] can serve as effective mitigation"); Commonwealth v. Brown, 582 Pa. 461, 521-22, 872 A.2d 1139, 1174 (2005) (Saylor, J., dissenting) (discussing the difference between mitigating evidence which is explanatory versus that which only attempts to humanize the defendant with jurors).

[2] As the appellee develops, counsel's failures in the above respects facilitated the prosecutor's argument, as follows:

> Now, the last mitigating factor that the defense is going to argue to you is any other evidence of mitigation concerning the character and record of the Defendant and the circumstances of his offense. . . . What is there about Henry Daniel's record that is in mitigation? Nothing. He's got a robbery conviction. What other evidence is there? The only other evidence you know anything about is the possibility that he may have gotten religion.

N.T., Nov. 13, 1989, at 122.

> reasonable chance of avoiding a death verdict in any event. The decision is further complicated by the fact that juries do not return such verdicts in every capital case in which the defendant has committed a heinous murder, or even multiple killings.
>
> I am most troubled by the speculativeness inherent in no-prejudice determinations, in view of the volume of cases in which we are being required to undertake them (due to a lack of preparedness on the part of members of the capital defense bar). . . . [Until the preparedness and other issues are addressed], I believe we should err on the side of providing defendants with one trial at which the defense is guided by a competent, prepared lawyer.

Commonwealth v. Koehler, 614 Pa. 159, 227-28, 36 A.3d 121, 162 (2012) (Saylor, J., concurring). I find that these remarks pertain equally here. Cf. Porter v. McCollum, 558 U.S. 30, 44, 130 S. Ct. 447, 455-56 (2009) (per curiam) ("We do not require a defendant to show 'that counsel's deficient conduct more likely than not altered the outcome' of his penalty proceeding, but rather that he establish 'a probability sufficient to undermine confidence in [that] outcome.'" (citation omitted; alteration in original)).

Next, relative to Part V(B) of the majority opinion, while acknowledging that the Court has previously settled on an extension of the Section 9711(d)(5) aggravator to "potential" prosecution witnesses, I have continuing reservations about construing aggravating circumstances more broadly than the plain language of the death-penalty statute will support. In this instance, the statute says "[t]he victim was a prosecution witness," 42 Pa.C.S. §9711(d)(5) (emphasis added), but the Court has extended these terms to "potential" witnesses via an allusion to what was believed to be the underlying legislative intent. See Commonwealth v. Appel, 517 Pa. 529, 537 n.2, 539 A.2d 780, 784 n.2 (1988). This manner of analysis presents an example in which the Court simply has not applied the strict construction appropriate to penal statutes, see 1 Pa.C.S. §1928(b)(1), or the narrowing construction to be implemented in relation to death-

penalty statutes, see Commonwealth v. Stallworth, 566 Pa. 349, 373, 781 A.2d 110, 124 (2001) ("[I]n the context of a statute defining a category of persons against whom it is permissible to impose a sentence of death, such strict construction should militate in favor of the least inclusive interpretation.") (citing Zant v. Stephens, 462 U.S. 862, 877, 103 S. Ct. 2733, 2742 (1983)). See generally Commonwealth v. Travaglia, 611 Pa. 481, 527, 28 A.3d 868, 896 (2011) (Saylor, J., concurring) (commenting on other instances in which a narrowing construction has not been maintained); Commonwealth v. Houser, 610 Pa. 264, 281-82, 18 A.3d 1128, 1138-39 (2011) (Saylor, J., concurring and dissenting) (same); Commonwealth v. Mitchell, 588 Pa. 19, 83-84, 902 A.2d 430, 469 (2006) (Saylor, J., concurring) (same); Commonwealth v. Robinson, 583 Pa. 358, 392-99, 877 A.2d 433, 453-57 (2005) (Saylor, J., concurring and dissenting).[3]

---

[3] I do not make these points to be obstreperous. My concern is that each accretion away from the plain language of a penal statute, ostensibly narrowly construed, creates another layer of uncertainty as to the actual parameters of the interpretive judicial review, in the death-penalty arena and otherwise. By way of another example, this Court has determined that prior juvenile adjudications are "convictions" for purposes of aggravation under the death-penalty statute, see Commonwealth v. Baker, 531 Pa. 541, 565, 614 A.2d 663, 675 (1992), irrespective of the fact that the Legislature has specifically indicated that "[a]n order of disposition or other adjudication in a proceeding under [the Juvenile Act] is not a conviction of a crime." 42 Pa.C.S. §6354. To my mind, given that juvenile adjudications are not convictions for nearly every other purpose, it is simply impossible to say that the Court is engaging in narrow construction, while it is simultaneously disregarding the statutorily-prescribed treatment of such adjudications for purposes of aggravation in capital punishment.

The same is true for aggravation when "[t]he victim was a prosecution witness." 42 Pa.C.S. §9711(d)(5). A strict or narrow interpretation of such terms obviously would require a relevant prosecution to have preceded the killing.

Under the sort of analysis employed in Baker and in Appel, the field appears to be wide open for judicial, policy-based extensions of the reach of the death-penalty statute. However, the governing federal constitutional overlay and rules of construction clearly delineated by the Legislature, as discussed above, forbid such extensions.

(continued…)

With regard to Part V(C) of the Majority Opinion, I support the majority's holding that there is no issue under Commonwealth v. Lassiter, 554 Pa. 586, 722 A.2d 657 (1998) (plurality), in the first instance. See Majority Opinion, slip op. at 75-76. I have a concern, however, similar to that raised in connection with the issue above, with the manner of analysis by which the Lassiter holding is being deemed to apply prospectively only. See id. at 74. Per such analysis, the Court maintains that Lassiter's plain-meaning interpretation of a clearly-worded statute – rendered in the absence of any previous decision interpreting the statute to the contrary upon a developed controversy -- represented a "change in the law." Id. To my mind, the non-retroactive application of Lassiter, or, more appropriately, the failure to apply Section 9711(d)(6), upon its own, straightforward terms to capital trials conducted prior to Lassiter, is not based on any firm reasoning. Accord Commonwealth v. Spotz, 587 Pa. 1, 109-11, 896 A.2d 1191, 1256-57 (2006) (Saylor, J., concurring) (elaborating on this perspective). Again, my main concern in reiterating this point is to stress the importance of strengthening the reasoning process. Accord supra note 3.

Concerning Part V(E) of the majority opinion, I have reservations about the conduct of joint penalty proceedings because of the potential impact of antagonistic defenses and spillover prejudice to aggravators and mitigation. See, e.g., State v. Carr, 331 P.3d 544, 717-20 (Kan. 2014) (disapproving the conduct of a joint penalty proceeding based on such concerns and awarding new, separate penalty hearings). In light of my conclusion that new penalty hearings are warranted for both appellees, I do not consider this question further here; however, as a supervisory matter, I would simply

---

(…continued)
Accordingly, it is my considered perspective that retrenchment is needed, defining the reach of the death-penalty statute according to its own terms, narrowly construed.

have required the conduct of separate, individualized proceedings on remand (had my position prevailed as to Daniels).

Finally, as to Part V(F), I appreciate the majority's denotation of my continuing disapproval of the prosecutorial practice of urging sentencing jurors to show the same mercy to a capital defendant as was shown to the victim. See Majority Opinion, slip op. at 82 n.12. My reasoning is based on the concern that such practice is fundamentally inconsistent with the plain terms of the governing statutory scheme, which is designed to permit the punishment of death only upon the rendering of reasoned moral judgments, not decisions made on the same lawless terms by which murders are committed. Accord Commonwealth v. Sneed, 616 Pa. 1, 38, 45 A.3d 1096, 1118 (2012) (Saylor, J., dissenting); cf. Commonwealth v. Spotz, 616 Pa. 164, 276, 47 A.3d 63, 131 (2012) (Saylor, J., concurring) ("In my view, justice would be better served, and protracted controversies more readily contained, if prosecutors would limit themselves more closely to the facts of the case in the context of the governing law.") (citations omitted).