564 A.2d 1254

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Richard D. BRODE, Appellant.**

Supreme Court of Pennsylvania.

Argued May 3, 1989,

Decided Oct. 20, 1989.

The prejudicial effect of the latter might be significantly less than that of the former.

George W. Porter, Carlisle, for appellant.

Thomas S. Long, Dist. Atty., Daniel G. Ehrgood, Lebanon, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Richard D. Brode was found guilty of first degree murder in the shooting death of his wife. After hearing, the jury fixed the sentence at death. This direct appeal follows pursuant to 42 Pa.C.S. § 9711.

■   Although the appellant has not renewed the claim made in post-trial motions that the evidence was insufficient to demonstrate the specific intent to kill, and thus to prove

first degree murder, it is our policy in all capital cases to ascertain that the evidence was indeed sufficient to establish the only crime for which this most extreme punishment is imposable. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982).

■ Richard and Carole Brode, married twenty-two years, had been living apart for several months in 1986, during Richard Brode's stay at an alcohol rehabilitation center and thereafter. On the morning of October 29, Richard Brode went to the marital residence to remove some items of personal property. While there, he asked his wife, as he had repeatedly done over the previous weeks, about coming home. Carole Brode told him that the marriage was over. Richard Brode then left the house and opened the trunk of his car. In the trunk was a shotgun and a box of shells that he had purchased the night before. He removed the gun from the box, assembled it, and put some shells in his pocket. He then returned to the house, loading the gun as he walked up the steps to the second floor, where his wife was in a bedroom. The two argued as Carole Brode tried to convince him to call his mother for help. Richard Brode then shot his wife once in the abdomen and once in the right elbow, reloaded, and shot two more times, hitting her in the chest.

Brode's defense sought to refute the inferences of planning and premeditation, and to establish his incapacity to form the specific intent to kill his wife. Brode testified that he had bought the shotgun as a gift for his son, to replace one he had been given that was too long and unwieldy. He explained that he had already drank four to six double shots of whiskey that morning before he went to retrieve a video cassette recorder and stereo from his wife's house. After being rebuffed in his request to return home, he was preparing to leave with the items he had gone to the house for. When he opened the trunk of his car, however, he saw the gun, and, in his words, "I don't know if I could take this anymore—I thought to myself." He then returned to the house, and after arguing with his wife shot and killed her.

Brode also presented the testimony of a psychiatrist, who offered the opinion that Brode had a number of psychiatric problems that, compounded by the influence of alcohol, rendered him incapable of forming the intent to kill his wife. The psychiatrist described in detail how, in his opinion, the anger and hostility associated with Brode's compulsive personality disorder overrode his judgment and ability to form a specific intent; how Brode's adjustment disorder with depression, resulting from the perceived lack of support upon leaving the rehabilitation center, affected his judgment and led to his resumption of drinking; and how Brode's alcohol consumption that day interfered with his cognitive abilities, noting especially that Brode's high tolerance for alcohol, developed during his years of alcohol dependence, was reduced because of his recent period of detoxification.

■ Appellate assessment of whether the evidence suffices to support a verdict examines that evidence in the light most favorable to the verdict winner and accords the benefit of all reasonable inferences in the same manner. This standard of review gives effect to and protects the factfinder's prerogative to accept all, part, or none of the evidence presented. Viewed in this way, the record evidence plainly supports the conclusion that Richard Brode caused the death of Carole Brode after having formed the specific intent to do so.

■ The appellant brings to this Court only one claim of error going to the portion of the proceedings at which his guilt was determined. Brode had proposed to offer an insanity defense based on expert testimony that as a result of the compulsive personality disorder, the adjustment disorder, and the chronic alcoholism, combined with the intoxication on the morning of the shooting, Brode suffered a mental disease or defect that rendered him unable to know right from wrong. After hearing the witness's proposed testimony in camera, the court ruled that it was inadmissible to establish the insanity defense, citing *Commonwealth v. Plank*, 329 Pa.Super. 446, 478 A.2d 872 (1984) and *Com-*

*monwealth v. Kuhn,* 327 Pa.Super. 72, 475 A.2d 103 (1984). Brode argues that this was error, that Pennsylvania law does not preclude such an insanity defense.

The statutory parameters for this issue are set by 18 Pa.C.S. §§ 308 and 315. Section 308 states

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

According to Section 315(b)

the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

Brode's argument posits his compulsive personality, adjustment disorder, and alcohol dependence as "diseases of the mind" within the meaning of Section 315. It is clear, however, that his expert witness considered Brode's ingestion of alcohol that morning as a necessary factor in Brode's mental condition at the time of the killing. To avoid the legislative judgment expressed in Section 305, Brode argues that owing to his alcohol dependence, his drinking was involuntary.

In *Commonwealth v. Plank,* Superior Court rejected this very argument. Guided by our decision in *Commonwealth v. Hicks,* 483 Pa. 305, 311, 396 A.2d 1183, 1186 (1979), where we stated that, "[i]t is obvious that an actor should not be insulated from criminal liability for acts which result from a mental state that is voluntarily self-induced," the court reasoned that if Plank "drank voluntarily, the insanity defense is barred because [he] induced the infirmity." 329

Pa.Super. at 451–52, 478 A.2d at 875. And following the plurality decision of another panel in *Commonwealth v. Kuhn,* which stated that as a matter of law involuntary intoxication cannot be established by showing that the defendant was a chronic alcoholic incapable of voluntarily refraining from ingestion of alcohol, the court stated, "[i]f we cannot excuse the antecedent act, [the] proposed defense dissolves." *Id.,* 329 Pa.Super. at 452, 478 A.2d at 876.

Although Brode claims that *Plank* is distinguishable in that Plank's illness was traced to "chronic abuse of alcohol" while Brode's psychiatrist labeled him "alcohol dependent", this distinction is untenable. Whatever terminology may have been used, it is clear that Superior Court understood Plank to be offering a "defense based upon a purported ungovernable impulse to drink," precisely the claim now made by Brode. We find the court's rationale in *Plank* rejecting such a defense to be sound, and the appellant offers no reasons why we should hold to the contrary.

Moreover, it is not to be overlooked that Brode's own expert never offered the opinion that Brode was unable to voluntarily refrain from drinking. It is true that he gave a general description of the power of the urge felt by those dependent on alcohol. This testimony, however, was offered at trial, when the purpose of the psychiatrist's testimony was to establish Brode's incapacity to form the specific intent necessary for first degree murder; the Commonwealth's objection to the testimony was sustained. Nowhere in the offer of proof as to the insanity defense was it claimed that Brode was unable to resist the urge to drink, either generally or on the morning of the killing. This is asserted entirely by way of argument. Having reviewed the transcript of the expert's proposed testimony, we are satisfied that the court correctly found that the offer did not properly raise an insanity defense. The evidence was thus properly excluded. There being no other claim of trial error, the jury's verdict of first degree murder will stand.

In challenging his sentence, the appellant identifies as erroneous several of the court's evidentiary rulings and

several of its instructions to the jury. He also argues that the sentence was disproportionate and excessive, that it was the product of passion, and that the evidence was insufficient to support the only aggravating circumstance found by the jury. Because we agree that the evidence does not support the finding that the offense was committed by means of torture, requiring that the sentence be vacated and the case remanded for imposition of a sentence of life imprisonment, we need not address the appellant's other arguments.

At the sentencing hearing, the Commonwealth introduced photographs of the victim, showing the gunshot wounds to her elbow, abdomen, and chest, a cut on her head, and her broken nose. A pornographic magazine found in the trunk of the appellant's car was introduced as evidence as well. According to the prosecutor, the photographs demonstrated that the shots were deliberately placed. Although no reason was offered why the appellant would have aimed to shoot the victim in the elbow, the prosecutor did suggest that the shot to the abdomen reflected the appellant's sexual frustration, as evidenced by his possession of the pornographic magazine.

The prosecutor also referred to the coroner's testimony during the trial that the shots to the elbow and abdomen preceded the fatal shots to the chest. He argued that the victim must have experienced considerable pain from these two shots before the shots to the chest caused instantaneous death. He also argued that the appellant's use of a shotgun rather than another kind of weapon gave rise to an inference that he intended to cause such pain.

The Commonwealth, of course, bears the burden of proving the existence of aggravating circumstances beyond a reasonable doubt. 42 Pa.C.S. § 9711(c)(1)(iii). In this case the only aggravating circumstance the Commonwealth argued to the jury was that "the offense was committed by means of torture," 42 Pa.C.S. § 9711(d)(8). The only testimony regarding the events prior to the shooting came from the appellant. Brode, whose memory was sketchy, testified:

We were arguing. She was sitting on the bed, and I guess she tried to get the shotgun from me. And I—I guess we sort of argued. She, she went down on the floor, and she grab, grabbed the phone and pulled it off the desk. She said she was going to call my mother. She said: You have to call your mother; it will be all right. I said: No, nothing will ever be all right.

And I remember standing, backing away from her, and I guess I pulled the phone out. I wasn't sure. She was still trying to dial.

And she was like four feet in front of me, and I just fired. I, I shot two shots. I didn't know where they hit or anything else. And I, I guess I reloaded again.

Q: Do you remember reloading, Dick?

A: Not the whole thing. I guess I did. Fired again.

Notes of Testimony p. 3–82. Although the jury was free to disbelieve this explanation, there was no other direct evidence as to what happened, what was said, or how long it took. The scenario suggested by the prosecutor, though it incorporated small bits of circumstantial evidence, was no more than conjecture.

■ Absent the Commonwealth's speculative hypothesis of vengeance wrought of sexual frustration, the only evidence bearing on the issue of torture was that of the pain the victim suffered from the first two shots before the shots to the chest killed her. Although by definition the separate intent to cause pain and suffering is an element that can distinguish an "aggravated" first degree murder from other first degree murders, the aggravating circumstance cannot be made out simply by showing that the victim suffered pain before dying.

■ While we have recognized that "[w]hen the means of torture are employed, we can believe, without a reasonable doubt, that the user of such means intended to torture his or her victim to death," *Commonwealth v. Pursell*, 508 Pa. 212, 239, 495 A.2d 183, 197 (1985), we do not agree with the prosecutor's suggestion to the jury that, because of the

manner of injury it inflicts, such a conclusion can be drawn from the use of a shotgun. Nor do we find any evidence to support the prosecutor's intimations that the appellant "wanted her to see the gun and let her know she was going to die," N.T. p. 5–164, or that he might have allowed time to elapse between shots so that the victim might suffer. Though the evidence indicates that he intended to kill his wife, on this record there is simply no evidence, direct or circumstantial, from which it can be concluded beyond a reasonable doubt that the appellant intended to torture her.

Having determined that the only aggravating circumstance offered by the Commonwealth was not supported by sufficient evidence, we must vacate the death penalty and remand for imposition of a sentence of life imprisonment. 42 Pa.C.S. § 9711(h)(4) (as amended, December 21, 1988, P.L. 1862, No. 179).

It is so ordered.

McDERMOTT, J., files a concurring opinion in which LARSEN, FLAHERTY and PAPADAKOS, JJ., join.

McDERMOTT, Justice, concurring.

The majority follows the statute that insanity as a defense must be a disease of the mind, depriving one from discerning the difference between right and wrong. They leave, however, the possibility for new argument that because "Nowhere in the offer of proof as to the insanity defense was it claimed that Brode was unable to resist the urge to drink, either generally or on the morning of the killing." Slip opinion p. 6. One might gather that had such argument been made different considerations would follow.

Under Pennsylvania Law, a person who commits an otherwise voluntary act under impulse is still considered to have committed the act voluntarily and is legally responsible for the consequences of that act. *See Commonwealth v. Banks,* 513 Pa. 318, 347–48, 521 A.2d 1, 15–16 (1987); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 27–39, 454 A.2d 937, 942–49 (1982); *Commonwealth v. Weinstein,* 499 Pa.

106, 451 A.2d 1344 (1982) (McDermott, J., concurring memorandum); *Commonwealth v. Tomlinson,* 446 Pa. 241, 252–254, 284 A.2d 687, 696 (1971); *Commonwealth v. Weinstein,* 442 Pa. 70, 274 A.2d 182 (1971); and *Commonwealth v. Neill,* 362 Pa. 507, 67 A.2d 276 (1949). Accordingly, those who drink, or use drugs are not excused under section 308 simply because they have done so under impulse or self-induced need. The General Assembly has excluded intoxicated and drug induced conditions from the parameters of section 315 by clearly defining the circumstances under which they can be raised in section 308. The majority establishes a dangerous precedent by failing to clearly identify the appellant's defense for what it is, futile and frivolous. Otherwise, I join the majority opinion.

LARSEN, FLAHERTY and PAPADAKOS, JJ., join this concurring opinion.