756 A.2d 1130

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**John Phillip OCKENHOUSE, Sr., Appellant.**

Supreme Court of Pennsylvania.

Submitted March 17, 2000.

Decided Aug. 21, 2000.

482

John P. Ockenhouse, Sr., appellant, pro se.

Glenn Goodge, Allentown, Standby Counsel for John P. Ockenhouse, Sr.

James Anthony, Allentown, for Commonwealth.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CAPPY, Justice.

This is an automatic direct appeal of the sentence of death imposed upon John Phillip Ockenhouse, Sr. by the Court of Common Pleas of Lehigh County.[1] This case is somewhat unique in that Ockenhouse, although sentenced to death, informed our court that he would not file a brief, and that he does not desire to contest his conviction or his sentence. While Ockenhouse has evidently accepted his conviction and sentence of death and has implicitly expressed his desire to forego appellate consideration of his case, our court is nevertheless required to review the decision imposing a sentence of death for adherence to our Commonwealth's Sentencing Code.[2] Following a detailed review of the record and the trial

1. This court's appellate jurisdiction over the direct appeal of a sentence of death is governed by 42 Pa.C.S. § 722(4) and § 9711(h)(1).

2. 42 Pa.C.S. § 9711.

court's opinion, for the reasons set forth more fully below, we affirm the judgment of sentence imposed by the trial court.

The facts underlying this case are as follows. Ockenhouse was convicted and sentenced for an undisclosed crime arising in Carbon County, Pennsylvania. On March 30, 1998, Ockenhouse was paroled to the Keenan House, located in Allentown, Lehigh County Pennsylvania. Keenan House contracts with the Pennsylvania Department of Corrections as a parole site for inmates leaving correctional institutions. Ockenhouse was paroled to Keenan House as an inpatient for receipt of drug and alcohol treatment and for development of a permanent home plan.

On April 10, 1998 at approximately 10:45 p.m., in violation of house rules, Ockenhouse left the Keenan House. When he left the Keenan House, circumstantial evidence indicates that he most likely had no or very little money on his person.[3]

Ockenhouse proceeded to the home of Curtis Kratzer, a former acquaintance. The victim, 91–year–old widow Naomi Spankowitch, was Kratzer's sister. Mrs. Spankowitch lived next door to her brother. From having stayed with Kratzer on previous occasions, Ockenhouse knew that Mrs. Spankowitch took care of Kratzer's financial affairs. On April 11, 1998, Ockenhouse sought Kratzer's opinion as to whether his sister would loan Ockenhouse some money. Kratzer replied that she would not lend Ockenhouse money.

The next day, Ockenhouse went to Mrs. Spankowitch's home where by his own admission he killed her and took approximately $100.00 from her wallet.

With regard to the manner of the killing, Ockenhouse pushed Mrs. Spankowitch onto her bed and first stuffed a pair of underwear into her mouth. He then kneed her in the back, fracturing her spine in three places. After breaking her back, Ockenhouse left the bedroom and went into the kitchen.

---

3. When paroled, Ockenhouse was only in possession of $5.60 in cash. Keenan House policy required residents to retain their money in a house account. The testimony established that at the time of Ocken-house's departure, his house account only held $1.75.

However, he discovered that Mrs. Spankowitch remained alive, whereupon he took a knife from the kitchen and began cutting and stabbing Mrs. Spankowitch. Ockenhouse cut her neck laterally several times in the front. These slashes cut through Mrs. Spankowitch's throat to her spine, severing her carotid artery and jugular vein. Above and below these incisions were seven stab wounds, one of which severed her right carotid artery. All of the stab wounds were inflicted prior to the deep slashing wounds. Also, an additional puncture wound was discovered on the victim's neck. There was a single stab wound to her back that occurred at or near the time of death. The knife was found imbedded in Mrs. Spankowitch's back when her body was discovered.

Ockenhouse was arrested and rendered a confession to police. The Commonwealth filed notice of two aggravating circumstances: that the killing occurred during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and that Mrs. Spankowitch was killed by means of torture, 42 Pa.C.S. § 9711(d)(8). Trial was set for November 30, 1998. On that date, Ockenhouse entered into a guilty plea to first-degree murder, robbery, theft, and receiving stolen property. The guilty plea was accepted following a colloquy in which it was established that Ockenhouse knowingly and voluntarily entered the plea.

On December 3, 1998, the date of sentencing, Ockenhouse motioned for the withdrawal of his attorneys, which was granted, subject to the trial court's order that counsel be present to assist Ockenhouse. The trial court then engaged in a colloquy regarding Ockenhouse's competence and his desire to waive his right to have a jury decide his sentence. The trial court deemed Ockenhouse to be competent and accepted his waiver of sentencing by jury.

The trial court heard the Commonwealth's evidence regarding the two aggravating circumstances. Ockenhouse refused to present any mitigating evidence, despite his counsel's indication of the existence of such evidence. The trial court conducted a colloquy regarding Ockenhouse's decision to forego the presentation of mitigating evidence. The trial court

permitted counsel to proceed with its offer of proof of mitigating evidence and allowed such information to be submitted into the record for purposes of confirming Ockenhouse's knowing and voluntary waiver of his right to present mitigating evidence.

Thereafter, the trial court sentenced Ockenhouse to death. Specifically, the trial court found that the Commonwealth had established the two proffered aggravating circumstances beyond a reasonable doubt. Furthermore, in accord with Ockenhouse's decision to withhold mitigation evidence, the trial court found no mitigating circumstances. Ockenhouse filed no post-sentence motions. However, Ockenhouse, through his attorneys filed a Concise Statement of Matters Complained of on Appeal.[4] The trial court issued a memorandum opinion in response thereto. Pursuant to the automatic direct appeal provisions found in 42 Pa.C.S. § 722(4) and § 9711(h)(1), the case progressed to this court for our review.

As noted above, it is evidently Ockenhouse's intention that our court affirm his conviction and judgment of sentence. Ockenhouse's letter to this court, received February 10, 2000, indicated that he did not intend to file a brief. Moreover, in his letter, Ockenhouse, *inter alia*, stood by his decision to proceed *pro se*, his decision to enter a guilty plea, and his decision not to present mitigation evidence. By deciding not to file a brief, Ockenhouse has presented no issues and has set forth no argument for our consideration.

■ However, regardless of Ockenhouse's desires, our court is required to conduct an automatic and independent review of all cases in which the death penalty has been

4. In sum, four issues were raised in the Concise Statement of Matters Complained of on Appeal: (1) whether the trial court erred in finding the aggravating circumstance that the killing occurred during the perpetration of a robbery; (2) whether the trial court erred in failing to consider mitigating evidence submitted by counsel; (3) whether the trial court erred in "variously limiting trial counsel's active participation in its client's case"; and (4) whether there was sufficient evidence to support a sentence of death. The trial court resolved each of these issues in favor of the Commonwealth in its January 21, 1999 memorandum opinion.

imposed. 42 Pa.C.S. § 9711(h)(1); *Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687, 689 (1991). This automatic review of capital cases has been rightfully described as "an integral and absolutely essential procedural safeguard prescribed by the legislature in the enactment of Pennsylvania's death penalty statute...." *Commonwealth v. Appel,* 517 Pa. 529, 539 A.2d 780, 781 (1988).

In the absence of any issues on appeal, our review is confined to a three-fold inquiry. The first inquiry stems from section 9711(h)(3)(i), which requires the court to affirm the sentence of death unless it determines that the sentence of death was "the product of passion, prejudice or any other arbitrary factor." Second, our court will review the record to determine whether the evidence fails to support the finding of at least one aggravating circumstance specified in section 9711(d). 42 Pa.C.S. § 9711(h)(3)(ii).[5]

Additionally, our court engages in a third, judicially-created inquiry that is inextricably linked with its statutorily required review. It has been determined by our court that to properly perform the statutory-requirements noted above, "and because 'imposition of the death penalty is irrevocable in its finality' and warrants, therefore, the relaxation of our waiver rules, *Commonwealth v. McKenna,* 476 Pa. 428, 437–41, 383 A.2d 174 (1978), our court shall review, in death penalty cases, the sufficiency of the evidence to sustain a conviction of murder of the first degree." *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Thus, in addition to the statutorily-mandated review,

5. Previously, our court engaged in the additional statutory inquiry of whether the sentence was disproportionate to the penalty imposed in similar cases. 42 Pa.C.S. § 9711(h)(3)(iii). Effective June 25, 1997, the General Assembly repealed the requirement of a proportionality review from the death penalty statute. Act of June 25, 1997, No. 28, § 1 (Act 28). Ockenhouse's death sentence was imposed after the effective date of the amendment; thus this case is not subject to a proportionality review. *Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225, 245 n. 34 (1999).

our court will also engage in an independent review of the sufficiency of the evidence used to establish the first-degree murder conviction. *Commonwealth v. Kemp*, 562 Pa. 154, 753 A.2d 1278, 1280 (2000); *Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997, 1001 (1998).

As has been this court's practice, and because a review of the sufficiency of the evidence of the underlying conviction is logically a threshold matter, we will address these three areas of inquiry in reverse order, beginning with an analysis of the sufficiency of the evidence.

As an appellate court considering the sufficiency of the evidence to establish the conviction that led to the sentence of death, we do not consider the evidence *de novo*. Rather, in reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 195 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). This standard is applicable in cases where the evidence is circumstantial, as long as the evidence implicates the accused in the crime beyond a reasonable doubt. *Commonwealth v. Cox*, 546 Pa. 515, 686 A.2d 1279, 1285 (1996).

The crime that served as the foundation for the sentence of death was first degree murder. "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). An intentional killing is a killing "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." *Id.* The willful, deliberate, and premeditated intent to kill is the element that is unique and distinguishes first-degree murder from other degrees of murder. *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293, 297 (1996). The Commonwealth may prove this specific intent to

kill by circumstantial evidence. *Id.* Furthermore, it is well established that the use of a deadly weapon on a vital part of the victim's body may constitute circumstantial evidence of a specific intent to kill. *Commonwealth v. Bond,* 539 Pa. 299, 652 A.2d 308, 311 (1995).

The evidence presented at trial included Ockenhouse's confession wherein he stated that on April 12, 1998, he went to Mrs. Spankowitch's home seeking to kill someone. Once inside the victim's home, Ockenhouse stuffed a pair of underwear into Mrs. Spankowitch's mouth and fractured her spine in three places. After realizing that she was still alive, Ockenhouse stabbed Mrs. Spankowitch with a kitchen knife, cutting her throat which resulted in the severing of her carotid artery and jugular vein. We conclude that the evidence, and all reasonable inferences deduced therefrom, when viewed in the light most favorable to the Commonwealth, was sufficient for the trial court to conclude that the Commonwealth met its burden of establishing the elements of first degree murder beyond a reasonable doubt.

Turning now to our statutory mandate, we will review the evidence in support of the two aggravating circumstances which the trial court found, and upon which it based its sentence of death. The first aggravating circumstance the Commonwealth sought to prove was that Ockenhouse committed the killing while in the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6). The trial court found that the Commonwealth established that Ockenhouse formed the specific intent to rob Mrs. Spankowitch before he killed her. We agree.

Robbery is established if in the course of committing a theft, a person inflicts serious bodily injury upon another. 18 Pa.C.S.A. § 3701. The evidence of record, when viewed in the light most favorable to the Commonwealth, discloses that when Ockenhouse left Keenan House, he most likely had very little or no money. After arriving at the residence of Curtis Kratzer, Ockenhouse asked Kratzer whether his sister would lend him money, to which Kratzer replied that she would not. The next day, Ockenhouse went to Mrs. Spankowitch's home

and, pursuant to his own admission, he killed her and took $100 from her wallet. Mrs. Spankowitch's purse, which contained the money, hung in the closet of the same room in which her body was found. Later that same day, Ockenhouse purchased alcoholic beverages, gasoline, and a lighter. Finally, subsequent to the killing, Ockenhouse's friend, John Trethan, observed Ockenhouse carrying some cash.

Although secured circumstantially, the record clearly establishes beyond a reasonable doubt that Ockenhouse intended to commit, and did commit, the felony of robbery. Furthermore, it is beyond peradventure that Ockenhouse killed Mrs. Spankowitch during the perpetration of that felony. Thus, we believe that the evidence supports the finding of the aggravating circumstance that the killing was committed during the perpetration of a felony.

We now turn to the second aggravating circumstance, that Mrs. Spankowitch was killed by means of torture. 42 Pa.C.S. § 9711(d)(8). At the outset, in undertaking a review of the sufficiency of the evidence with respect to this aggravating circumstance of torture, we must be mindful that the legislature has seen fit to reserve the ultimate penalty of death for only a genuinely limited class of cases. Every conviction for first degree murder does not result in a sentence of death. Rather, execution is appropriate only in those cases in which the Commonwealth beyond a reasonable doubt proves one or more of the enumerated aggravating circumstances found in the Sentencing Code. *Commonwealth v. Auker*, 545 Pa. 521, 681 A.2d 1305, 1321 (1996).

To establish that a murder was committed by means of torture, the Commonwealth is required to prove beyond a reasonable doubt that the defendant "intentionally inflicted on [the victim] a considerable amount of pain and suffering that was unnecessarily heinous, atrocious, or cruel, manifesting exceptional depravity." *Commonwealth v. Karenbauer*, 552 Pa. 420, 715 A.2d 1086, 1099 (1998); *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078, 1091 (1993); *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699, 709

(1989). Torture includes the infliction of intense pain to punish or to coerce; it is torment, agony, or anguish to the body or mind. *Cox*, 686 A.2d at 1289; *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728, 737 (1987). The linchpin of the torture analysis is the requirement of an intent to cause pain and suffering *in addition to* the intent to kill. *Edmiston*, 634 A.2d at 1091. That is to say that there must be an indication that the defendant was not satisfied with the killing alone. *Commonwealth v. Caldwell*, 516 Pa. 441, 532 A.2d 813, 817 (1987).

■■■■■ However, neither the efficacy of the means employed by a defendant to murder his victim nor the immediacy of death is in itself determinative of the question of whether the offense was committed by means of torture. *Id.* The aggravating circumstance cannot be established simply by demonstrating that the victim suffered pain before dying. *Commonwealth v. Brode*, 523 Pa. 20, 564 A.2d 1254, 1257 (1989). Indeed, to read the aggravating circumstance of torture so broadly as to cover all painful demises would be contrary to the General Assembly's intent regarding aggravating circumstances.

■■■■■ On numerous occasions, our court has considered whether the evidence adduced at trial was sufficient to support the aggravating circumstance of torture beyond a reasonable doubt. Oftentimes, this is an especially difficult determination because in virtually all cases of murder, the perpetrator inflicts terrible pain and suffering on the victim, and by definition, the individual who inflicts this killing upon another does so with specific intent. However, a number of factors can be distilled from a review of these cases and give guidance as to whether the facts support a finding that a murder was committed by means of torture. These factors include, but are not limited to: (1) the manner in which the murder is committed, including the number and type of wounds inflicted;[6] (2) whether the wounds were inflicted in a vital or non-

6.  *Karenbauer*, 715 A.2d at 1099 (1998)(torture found where after inflicting eighteen wounds scattered over the victim's arm, chest, back, head

vital area of the body;[7] (3) whether the victim was conscious during the episode;[8] and (4) the duration of the episode.[9]

and neck, defendant elected to drown the victim, thus, defendant in position to fatally wound victim yet chose not to do so.); *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763, 780 (1998)(same, where victim hit over head then mouth taped after which various materials were wrapped around victim's head and bound in fashion in which breathing was restricted, ultimately resulting in lingering death by suffocation); *Commonwealth v. Marinelli*, 547 Pa. 294, 690 A.2d 203, 212 (1997)(same, where prior to gunshot wounds to head, victim received forty-seven impact injuries from cylindrical object consistent with a baseball bat and those administered by kicks—injuries to arm, hand, leg, chest, abdomen, neck, ear, cheek, head, and scalp); *Heidnik*, 587 A.2d at 692–93 (1990)(same, victim hung by wrist from ceiling, fed bread and water and subjected to beatings, victim administered electrical shock while in water-filled pit); *compare Auker*, 681 A.2d at 1321 (torture not established where defendant forcibly placed victim in trunk, transported victim to secluded wooded area, then inflicted seven to ten stab wounds and left victim to die); *Caldwell*, 532 A.2d at 817 (torture not established where elderly couple were bound to chairs facing each other and in which wife's throat slashed in view of husband, after which defendant slashed husband's throat and victims were left to die).

7. *Karenbauer*, 715 A.2d at 1099 (torture established where eighteen wounds scattered over victim's chest, back, head, and neck, none of which were deep enough to cause death but deep enough to cause pain to victim); *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 480 n. 10 (1998)(same, where victim stabbed twenty-eight times, twenty-six of the twenty-eight wounds were non-lethal, during four separate attacks); *Commonwealth v. Stevens*, 543 Pa. 204, 670 A.2d 623, 628 (1996)(same, where none of the nine gunshot wounds to victim, inflicted with use of hollow point bullets, were individually capable of causing death, and final shot to scrotum area done with intent to sexually maim).

8. *Karenbauer*, 715 A.2d at 1099 (torture established where victim remained conscious after receiving eighteen stab wounds scattered over body and during subsequent drowning); *Marinelli*, 690 A.2d at 212 (same, where gunpowder residue on victim's hand from attempt to defend self and eye open at time victim was shot demonstrated that victim was conscious and aware of what was happening during one-half to two hour beating); *Stevens*, 670 A.2d at 628 (none of wounds caused victim to lose consciousness); *but see Thomas*, 561 A.2d at 708 (how long a victim can withstand attacks before unconsciousness overtakes the mind is not part of Commonwealth's burden nor is such a consideration part of the aggravating circumstance of torture).

9. *Commonwealth v. Elliott*, 549 Pa. 132, 700 A.2d 1243, 1255 (1997)(torture found where victim was alive for thirty to sixty minutes after attack in which victim was beaten, raped, sodomized, and strangled); *Marinelli*, 690 A.2d at 212 (same, where beating lasted at least one-half hour and perhaps as long as two hours).

While these considerations are not exhaustive, or in and of themselves determinative of the establishment of the aggravating circumstance of torture, these factors enlighten the inquiry and are the primary criteria by which our court has grappled with this formidable task.

In applying these factors to the case at hand, and considering the facts in prior cases which give contour to the meaning of torture, we believe that the sufficiency of the evidence in this case presents an extremely close call. Ockenhouse stuffed underwear into Mrs. Spankowitch's mouth, jumped on her kneeing her in the back, fracturing her spine in three places, and twisting her neck. Only after Mrs. Spankowitch's body moved did Ockenhouse realize that he had not killed her by strangulation and that she remained alive. At that point, Ockenhouse stabbed Mrs. Spankowitch in the neck, cut her throat, and then stabbed her in the back.

The number of stab wounds inflicted by Ockenhouse was seven to ten wounds. The type of wounds were stabbing and cutting wounds. Only the initial puncture wound was superficial. All other wounds were deep, including the slicing wounds which cut Mrs. Spankowitch's jugular vein and carotid artery. Distinguishable from other situations in which torture was established, there were no wounds on her arms, face, chest or other non-vital areas which would have indicated an intent to cause pain and suffering in addition to the intent to kill. Rather, the wounds were inflicted to a vital area of the body, the neck. As to consciousness during the attack, the evidence was simply unclear as to whether Mrs. Spankowitch was aware of what was going on although there was no indication that she was unconscious. Finally, unlike other instances of prolonged abuse ending in death, the duration of the episode was uncertain, but relatively limited, lasting at most only several minutes.

Had Ockenhouse merely stabbed Mrs. Spankowitch, we would probably have to conclude that the aggravating circumstance of torture was not established beyond a reasonable doubt. However, we find it particularly critical to our determination regarding torture that Ockenhouse confessed to first

purposely jumping on Mrs. Spankowitch's back with his knee. Mrs. Spankowitch, who was 91–years–old at the time of the killing stood five foot three inches and weighed one hundred and forty pounds. This assault resulted in three separate fractures to Mrs. Spankowitch's spine. Ockenhouse felt Mrs. Spankowitch's bones break as he drove his knee into her back. This renders the episode qualitatively different than if Ockenhouse had killed by stabbing alone. Dr. Sara Funke, a forensic pathologist, testified that Mrs. Spankowitch's spine fractures were consistent with her back being forced backwards, which although not lethal, would have been enormously painful and would have rendered her helpless.

Again, it is important to note that our review is colored; we must view all the evidence, with all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth. In this aura, by purposefully jumping on Mrs. Spankowitch's back and fracturing her spine, Ockenhouse demonstrated that he was not satisfied with merely killing Mrs. Spankowitch. He evinced the additional intention to cause pain and suffering beyond his desire to merely kill. Thus, we agree with the trial court's determination and find that the evidence adduced by the Commonwealth was sufficient to establish the aggravating circumstance of torture beyond a reasonable doubt.

Finally, we will address whether the trial court's determination was a product of passion, prejudice or any other arbitrary factor. 42 Pa.C.S. 9711(h)(3). We have engaged in an exhaustive review of the record. Based upon our review, there is nothing in the record to suggest that the sentence of death was spawned by, or infected with, passion, prejudice, or any other arbitrary factor. Rather, the sentence was based upon the evidence admitted at trial and in compliance with the statutory mandate of the imposition of a sentence of death when one or more aggravating circumstances are found and no mitigating circumstances are embraced. *See* 42 Pa.C.S. § 9711(a), (b).

We have found that there was sufficient evidence to support the underlying conviction for first degree murder. Further,

we have determined that there was sufficient evidence to support the aggravating circumstances that the killing was committed in the perpetration of a felony and that the killing was performed by means of torture. We also recognize that Ockenhouse chose to withhold from the trial court's consideration all mitigation evidence. Finally, we find that the trial court's determination was not a product of passion, prejudice or other arbitrary factors. Thus, we affirm the sentence of death. 42 Pa.C.S. § 9711(c)(1)(iv); *Lester,* 722 A.2d at 1006 n. 15 (Pa.1998).

The verdict and sentence of death are hereby affirmed.[10]

Justice ZAPPALA files a concurring opinion.

Justice NIGRO concurs in the result.

ZAPPALA, Justice, concurring.

I join in the majority's opinion in all aspects, with the exception of the analysis regarding the aggravating circumstance of torture. I would find that the Commonwealth did not present sufficient evidence to show that Appellant murdered Mrs. Spankowitch by means of torture.

While I agree with the majority's statement of the law regarding the aggravating circumstance of torture, 42 Pa.C.S. § 9711(d)(8), I disagree with the majority's application of that law to the facts of this case.

The majority finds that:

by purposefully jumping on Mrs. Spankowitch's back and fracturing her spine, [Appellant] demonstrated that he was not satisfied with merely killing Mrs. Spankowitch. He evinced the additional intention to cause pain and suffering beyond his desire to merely kill.

Majority opinion at 1138. The majority further states that Appellant also twisted Spankowitch's neck simultaneous to

10. As is our statutory duty, the Prothonotary of the Supreme Court is hereby directed to transmit to our Governor a full and complete record of the trial, sentencing hearing, imposition of sentence and review by our court. Notice of this transmission shall hereby be contemporaneously provided to the Secretary of Corrections. 42 Pa.C.S. § 9711(i).

incapacitating her by breaking her back. *Id.* at 1137. However, "[o]nly after Mrs. Spankowitch's body moved did [Appellant] realize that he had not killed her by strangulation and that she remained alive." *Id.* Upon that realization, he fatally stabbed Spankowitch in the neck.

I do not agree that the Commonwealth proved beyond a reasonable doubt that Appellant was not satisfied with the killing alone, *Commonwealth v. Caldwell,* 516 Pa. 441, 532 A.2d 813, 817 (1987); or that the Commonwealth proved the "linchpin" of the torture analysis, which is the intent to cause pain and suffering in addition to the intent to kill, *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1091 (1993). However, I join the majority in finding that the Commonwealth did sufficiently prove that the killing was committed while in perpetration of a felony, 42 Pa.C.S. § 9711(d)(6). Because there was at least one aggravating circumstance and no mitigating circumstances, the judgment of sentence is properly affirmed.