J-A33018-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MERION PACE, | : | |
| | : | |
| Appellant | : | No. 116 EDA 2014 |

Appeal from the Judgment of Sentence Entered September 9, 2013
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0007475-2011

BEFORE:    LAZARUS, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED MARCH 24, 2015**

Merion Pace (Appellant) appeals from the September 9, 2014 aggregate judgment of sentence of 25 to 50 years' incarceration. We are constrained to affirm.

On May 30, 2011, Appellant fired multiple gunshots into a car in which Johnny Cooper, Deandre Murphy, and Lawrence Murphy were present; only Lawrence Murphy was hit. On April 17, 2013, a jury convicted Appellant of, *inter alia*, three counts each of attempted murder and aggravated assault. Appellant was sentenced on September 9, 2013, after which he timely filed a post-sentence motion. The trial court denied the motion, and Appellant timely filed a notice of appeal on November 27, 2014.

The trial court did not order Appellant to file a concise statement of errors complained of on appeal. A docket entry on February 6, 2014,

---

*Retired Senior Judge assigned to the Superior Court.

indicates that no trial court opinion was filed because the trial judge was no longer sitting.

Appellant presents the following questions for this Court's consideration.

I.   Was the evidence insufficient to sustain Appellant's convictions … for attempted murder(s) and aggravated assault(s) as to Johnny Cooper and Deandre Murphy?

II.  Did the trial court commit reversible error by permitting argument and charging the jury with transferred intent?

III. Did the trial court commit reversible error by not charging the jury on an adverse inference for missing witnesses?

Appellant's Brief at 4 (trial court answers and unnecessary capitalization omitted).

Appellant's challenge to the sufficiency of the evidence is subject to the following standard of review.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the

[finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Harden***, 103 A.3d 107, 111 (Pa. Super. 2014) (quoting

***Commonwealth v. Phillips***, 93 A.3d 847, 856 (Pa. Super. 2014)).

Appellant claims that the Commonwealth at trial failed to offer sufficient evidence to establish the intent elements of attempted murder and aggravated assault as to victims Johnny Cooper and Deandre Murphy. Appellant's Brief at 8-10. This Court has described the *mens rea* of these crimes as follows.

An individual is guilty of attempted murder in the first degree if he commits an act that is a substantial step towards the commission of the crime with a specific intent to kill. Similarly, an individual is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or] (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

… In order to sustain a conviction for aggravated assault, the Commonwealth does not have to prove that the serious bodily injury was actually inflicted but rather that the Appellant acted with the specific intent to cause such injury. Further,

[w]here the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury. The Commonwealth may prove intent to cause serious bodily injury by circumstantial evidence. In determining whether the Commonwealth proved the Appellant had the requisite specific intent, the fact-finder is free to conclude the accused intended the natural and

- 3 -

probable consequences of his actions to result therefrom. A determination of whether an appellant acted with intent to cause serious bodily injury must be determined on a case-by-case basis.

A[s] intent is a subjective frame of mind, it is of necessity difficult of direct proof[.] We must look to all the evidence to establish intent, including, but not limited to, appellant's conduct as it appeared to his eyes[.] Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances. Moreover, depending on the circumstances even a single punch may be sufficient.

*Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008) (internal quotation marks and citations omitted).

A review of the record reveals that the Commonwealth offered the following into evidence at trial. On Memorial Day of 2011, Johnny Cooper drove Deandre Murphy and Lawrence Murphy, who was visiting from Alabama and was unfamiliar with the area, to the home of Cooper's aunt (Aunt Valerie) on Gratz Street in Philadelphia. N.T., 4/11/2013, at 148. As he parked the car in front of the house, Cooper found his young cousin playing in the street. *Id.* at 150-51. Cooper informed the child that it is "not right to be in the street," and proceeded into Aunt Valerie's house. *Id.* at 152. The Murphy brothers remained in the car. *Id.* at 154.

Inside Aunt Valerie's house, Cooper encountered a young man between the ages of 17 and 20 whom he had never seen before. *Id.* at 153. The young man questioned who Cooper was and what he was doing in the

house; Cooper took offense and inquired who he was to be questioning Cooper's presence. *Id.* at 157. The argument escalated, with Cooper and the young man threatening to hit each other. *Id.* at 156. The young man then made a phone call to an unknown recipient and complained about Cooper being "around here talking trash or whatever." *Id.* Cooper chose to leave the house; no physical altercation took place. *Id.* at 158.

When Cooper exited the house, he saw a group of more than 20 people approaching Aunt Valerie's house. *Id.* at 158, 160. Appellant, whom Cooper had seen around Aunt Valerie's house before, was in the group. *Id.* at 161-62. Appellant had been romantically involved for five years with Aunt Valerie's daughter Felicia, and was close with Aunt Valerie. N.T., 4/15/2013, at 135. Cooper returned to the driver's seat of the car in which he had arrived. N.T., 4/11/2013, at 163. Lawrence Murphy was seated in the front passenger seat and Deandre Murphy was seated behind him. *Id.* The group approached the car, and someone was saying "shoot him, shoot him." *Id.* at 58-59. As Cooper was pulling away from the curb, Appellant was on the sidewalk, next to the front passenger side of the car, with a gun. *Id.* at 168. Appellant put his arm inside the front passenger window and fired, hitting Lawrence Murphy. *Id.* at 59. Deandre Murphy jumped into the front seat to attend to his wounded brother. *Id.* at 64. Additional shots were fired, more than four in total, and Cooper sped off to the hospital. *Id.* at 164, 169.

Later examination of the car revealed that one shot entered through the rear passenger-side window, shattering it; that bullet, or another from the same trajectory, travelled through the headrest of the front passenger seat and struck Lawrence Murphy in the neck. N.T., 4/12/2013, at 151-52. Another bullet had entered the front passenger window and exited though the driver's door. *Id.* at 141. Another shot entered the car through the rear windshield, shattering it, and struck Lawrence Murphy in the chest. *Id.* at 150. In all, the damage to the car was consistent with a person standing on the sidewalk next to the car and firing into the car repeatedly as it drove away. *Id.* at 156.

The Commonwealth argued that this evidence showed that Appellant had formed the specific intent of shooting all three men in the car:

> attempted murder requires the willful, deliberate premeditated, intentional act of attempting to kill another person. This is not as complicated as it might sound, it really just means that in an instant you formulate the desire and you have shown the intent that you're going to try to take another human being's life.
>
> And when you walk up to a person, I don't care if it's five feet, 10 feet or 15 feet. You point a gun at them and you fire at least four or five shots at a car that they're in from point blank range. And apparently, you see the blood splatter everywhere, you hear a person say I'm shot and that the vehicle is driving away. And you keep pulling that trigger one, two, three, four, five times. You've shown that you have the hardness of heart. You've shown that you're delivering the message that you want to deliver. That you don't come to Gratz Street and tell us, some distant family member, how we're going to live. You don't come and threaten that other kid that's inside the house. He's one of ours. He's one of [Appellant's].

And essentially, you have to die to understand your place. That's Lawrence Murphy. That's what he learned from Appellant that day.

He's charged with the attempted murder of the other two people in the [] vehicle. Because I'll be honest with you, I don't think he cared who he killed. He was probably realistically trying to kill Johnny [Cooper]. I mean, that one bullet that clearly went through the driver side door, that was meant for Johnny. Lawrence, again, who doesn't know anybody from a can of paint. He's the one who got victimized for Johnny's temper, his argument and just being in the wrong place at the wrong time.

Deandre, I don't even know that anybody knows that Deandre exists at this point in time either. Just like Lawrence. Sitting in the car. But again, Deandre is in that vehicle at the time that those shots are being fired at him. Especially from the back. Deandre in the back seat, some of those bullets had to go right past Deandre, right by his head to hit Lawrence.

Aggravated assault. You have either one of two ways that you're going to hear about this. You either have the intention to inflict serious bodily injury or you actually inflict it. Well, Lawrence had serious bodily injury inflicted upon him. …

[Appellant] acted with the intent to inflict serious bodily injury. And he acted with the intent to do it to all three. He actually inflicted it on Lawrence. But the fact that he didn't hit the other two people doesn't mean he's not guilty of that crime. It means he's guilty of the same crime, he just intended to do it and didn't accomplish his goal.

N.T., 4/15/2013, at 186-88.

Appellant does not dispute that the evidence was sufficient to support the attempted murder and aggravated assault charges as to Lawrence Murphy, who was shot in a vital part of his body and gravely injured. He challenges only the intent elements of his convictions as to Johnny Cooper and Deandre Murphy.

From our review of the record, we have no hesitation in holding that the Commonwealth offered sufficient evidence for the jury to conclude reasonably that Appellant had the specific intent to kill and/or inflict serious bodily injury upon Johnny Cooper, the one man in the car who had argued with several people inside and outside of the house of the mother of Appellant's long-term girlfriend. From the totality of the circumstances surrounding the shooting, it was well within the province of the jury to find that Appellant pointed his gun and fired at Johnny Cooper, and Lawrence Murphy was merely unfortunate in being caught between shooter and target. **See**, **e.g.**, **Commonwealth v. Woods**, 710 A.2d 626, 631 (Pa. Super. 1998) ("[T]he jury was certainly entitled… to find the necessary intent to support an aggravated assault charge from the fact that appellant fired his weapon into [the victim's] vehicle while he occupied it.").

However, the resolution of Appellant's sufficiency challenges to the convictions with Deandre Murphy as the victim is far less clear, and it implicates Appellant's second issue on appeal regarding transferred intent.

To meet its burden of proof on the charge of the attempted murder of Deandre Murphy, the Commonwealth had to prove that Appellant acted with the specific intent to kill Deandre Murphy. Similarly, because Deandre Murphy was uninjured, to sustain the aggravated assault conviction, the Commonwealth was required to prove that Appellant attempted to cause serious bodily injury to Deandre Murphy. **See Holley**, 945 A.2d at 247

("[W]here the victim does not sustain serious bodily injury, the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury.") (internal quotation marks and citations omitted). However, the Commonwealth acknowledged in its closing argument that there is no evidence or suggestion that, when Appellant fired at Johnny Cooper, and instead hit Lawrence Murphy, "anybody kn[ew] that Deandre exists at this point in time…." N.T., 4/15/2013, at 187.

Clearly, Appellant could not have formed the specific intent to kill or seriously injure someone of whose existence he was unaware. The Commonwealth further highlighted the lack of evidence of intent as to charges related to Deandre Murphy in its argument in response to Appellant's motion for judgment of acquittal,

> it's not necessarily clear at that point with those final shots, whether or not [Appellant] had the specific intent to kill [Deandre] Murphy, but he arguably could. He could have arguably been shooting at Mr. Deandre Murphy and hit Mr. Lawrence Murphy. He could have been also attempting to shoot Johnny Cooper and hit Lawrence Murphy.
>
> … All that I have to show [is] that [Appellant] … had specifically formed the specific intent, had hardened his heart to such capacity that he was willing to take another life and that he took a substantial step towards completing that action.
>
> Now, I'm not hamstrung by proving that he had to have the specific intent to kill each single individual in the car. … But I'd ask for that transferred intent instruction because it's probable, very likely that he had … formed the specific intent to kill Mr. Cooper, and the intent of the person who was involved in the initial argument.

- 9 -

But in that process, he exposed Mr. Murphy, Deandre Murphy and Mr. Lawrence Murphy to the exact same risk. And therefore, his intent transferred to those people who were at risk.

N.T., 4/15/2013, at 78-79.

Evidence merely supporting the possibility that Appellant' had the specific intent to kill Deandre Murphy is insufficient to prove beyond a reasonable doubt that Appellant had the intent to kill or harm him. **Commonwealth v. Ockenhouse**, 756 A.2d 1130, 1135 (Pa. 2000) (noting that the Commonwealth must prove each element of the offense beyond a reasonable doubt). Indeed, in the argument quoted above, the Commonwealth tacitly conceded that its case as to Deandre Murphy depended upon Appellant's homicidal intent towards Johnny Cooper transferring to Deandre Murphy.

The doctrine of transferred intent is codified in the following statute:

**Divergence between result designed or contemplated and actual result.--**When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too

- 10 -

remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S. § 303(b).

Our Supreme Court addressed the applicability of the doctrine in the factually-similar aggravated assault case of *Commonwealth v. Thompson*, 739 A.2d 1023 (Pa. 1999). In that case, Francisco Forbes worked for marijuana dealer Donovan Aitken, serving as a driver and collector of accounts receivable. On the day in question, Forbes drove to Aitken's apartment. On his way from the car to the apartment, Thompson approached Forbes to bum a cigarette. Forbes entered the apartment and exited a short time later with Aitken. Forbes saw Thompson pull out a gun and begin firing towards them. Aitken was hit and fell. Forbes believed initially that he had been hit, but discovered that he had not and was able to run back to the apartment building. Forbes then saw Thompson approach Aitken's prone body and shoot him several more times. In addition to the murder of Aitken, Thompson was convicted of aggravated assault as to Forbes.

On appeal, Thompson claimed that the evidence was insufficient to sustain his aggravated assault conviction, and challenged the trial court's jury instruction on transferred intent. Thompson argued that the fact that Forbes was neither shot nor an intended victim rendered the instruction

- 11 -

inapplicable. **Id.** at 1029. Our Supreme Court held that transferred intent was implicated by the proven facts.

> [I]n order to sustain the conviction for aggravated assault, the Commonwealth only needed to establish that [Thompson] attempted to cause serious bodily injury. There is no requirement that the victim actually be injured. Moreover, [Thompson's] argument that the transferred intent instruction was not warranted because he did not intend to shoot Forbes ignores the essence of the transferred intent doctrine, that is, the person who ultimately is the victim not be the original intended victim.[16] The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime. The evidence here demonstrated that [Thompson] shot in the direction of Forbes even though he may have only intended to shoot Aitken. This evidence was sufficient to warrant the transferred intent instruction. …
>
> _____
> [16] The jury could also have concluded that Forbes was also an intended victim of [Thompson] as he had initially believed that he had been shot and was a potential witness if [Thompson] was later apprehended.

**Id.** at 1029-30 (internal citations and quotation marks omitted).

This Court was called upon to apply **Thompson** in **Commonwealth v. Jackson**, 955 A.2d 441 (Pa. Super. 2008). In that case, Jackson and others made an attempt to murder Charles Wesley while Wesley was in the midst of a group of police officers who were investigating an earlier attempt on Wesley's life. In so doing, Jackson fired his gun in the vicinity of seven other people on the scene, and was correspondingly convicted of seven counts of aggravated assault. On appeal, Jackson claimed, similar to Appellant in the

case *sub judice*, that the evidence was insufficient to sustain those

convictions:

> While [Jackson] admits that he intended to shoot Wesley, [Jackson] contends that these other persons were simply in the way. [Jackson] argues that the Commonwealth failed to establish that he had the specific intent to cause serious bodily injury to any of these persons, and thus, the requisite intent for his aggravated assault convictions is lacking.

*Id.* at 445-46. This Court agreed with Jackson:

> the evidence shows that [the seven individuals who served as the victims for the seven counts of aggravated assault] were near [Jackson's] intended victim. The evidence shows that [Jackson] fired a deadly weapon toward them. There is, however, no other evidence, in the form of circumstances, actions or words, occurring before, during, or after the shooting, that tends to demonstrate that [Jackson] specifically intended to inflict injury upon these particular persons. Therefore, the only circumstance in the record from which it may be inferred that [Jackson] had the intent to cause these persons serious bodily injury was his firing a deadly weapon in their direction. Based upon the totality of the circumstances, we conclude that the evidence was insufficient to establish beyond a reasonable doubt that [Jackson] harbored the specific intent to cause serious bodily injury with a deadly weapon to any of these persons.

*Id.* at 448. The Commonwealth argued, as it did in the instant case, that

the intent element of the assaults was satisfied under the doctrine of

transferred intent.

> The Commonwealth argues that under the doctrine, [Jackson's] admitted intent to shoot and cause Wesley serious bodily harm, satisfies the intent element for [Jackson's] aggravated assault convictions of these persons. [Jackson] counters that the doctrine of transferred intent does not apply in this case because these persons were not actually injured. It is [Jackson's] position that the doctrine is not meant to apply and has not been applied to a charge of aggravated assault, when

- 13 -

criminal liability is premised on the attempt to cause serious bodily injury to another. [Jackson] further argues that 18 Pa.C.S.A. § 303(b), enacted to reflect existing law, reveals that the doctrine is to be used only where a defendant shoots a gun at a person, intending to cause serious bodily injury, but hits another, or where the defendant shoots the intended victim, but does not cause serious harm.

*Id.* (internal citation omitted) (citing ***State v. Brady***, 903 A.2d 870 (Md. 2006) (holding that the doctrine of transferred intent is inapplicable to crimes of attempt because, in such instances, the defendant commits a complete crime against the intended victim)).

Upon consideration of ***Thompson***, this Court was constrained to agree with the Commonwealth that Jackson's specific intent to kill Wesley transferred to the seven bystanders, satisfying the intent elements for Jackson's aggravated assaults of those seven people. However, this Court urged our Supreme Court to overrule ***Thompson***:

While we are bound by our Supreme Court's ruling in ***Thompson***, we respectfully urge the Court to reconsider it. In our view, the doctrine of transferred intent as set forth by the Supreme Court of Maryland in ***Brady*** is persuasive. It retains the commonly understood notion that the unintended victim must be actually injured before the doctrine of transferred intent maty apply. It is also consistent with the language in 18 Pa.C.S.A. § 303(b), and the statute's aim to codify existing law.

***Jackson***, 955 A.2d at 450 n.6 (citations omitted).

Given this precedent, we must affirm Appellant's convictions and sentence as to Deandre Murphy. Appellant fired shots which nearly missed hitting Deandre Murphy, satisfying the attempt (substantial step) elements

of attempted murder and aggravated assault. Under **Thompson** and **Jackson**, Appellant's intent to kill or seriously injure Johnny Cooper transferred to Deandre Murphy, despite his lack of actual injury, satisfying the intent elements of the crimes. While this result appears to conflict with common understanding of the doctrine as well as the express language of the relevant statutes, we cannot overrule our Supreme Court.[1]

In his final issue on appeal, Appellant challenges the trial court's failure to instruct the jury that it may make an adverse inference from the fact that the Commonwealth did not call Deandre Murphy to testify at trial. Appellant's Brief at 16.

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.
>
> This Court has delineated the circumstances which preclude issuance of the instruction.
>
> > 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;
> >
> > 2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;
> >
> > 3. The uncalled witness is equally available to both parties;

---

[1] We, as did the majority in **Jackson**, urge our Supreme Court to overrule **Thompson**.

- 15 -

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

To invoke the missing witness instruction against the Commonwealth, the witness must only be available to the Commonwealth and no other exceptions must apply.

*Commonwealth v. Boyle*, 733 A.2d 633, 638 (Pa. Super. 1999) (internal quotation marks and citations omitted).

We are unconvinced that Appellant is entitled to relief. First, Appellant fails to establish that he requested the instruction or objected to its omission.[2] *See* Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). Second, the record fails to show that Deandre Murphy, who had relocated to Alabama after the shooting, was within the exclusive control of the Commonwealth and that no exception, such as a satisfactory explanation for its failure to call him as a witness, applied. Accordingly, Appellant has failed to meet his burden of persuading this Court that relief is due. *See*, *e.g.*,

_____

[2] Although Appellant cites to the trial transcripts in his brief where the issue purportedly was raised, Appellant's Brief at 16-17, we have found no discussion of the instruction at the cited pages or elsewhere in the record.

***Commonwealth v. Wrecks***, 931 A.2d 717, 722 (Pa. Super. 2007) ("An appellant … has the burden to convince us that there were errors and that relief is due because of those errors.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 3/24/2015